104 N.J. Super. 187 (1969)
249 A.2d 70
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEON K. ALLEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1968.
Decided January 13, 1969.
*188 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Kenneth S. Javerbaum, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. William J. Brennan, III, Assistant Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant voluntarily pleaded guilty on October 27, 1965 to an indictment charging him with having committed the crime of larceny from the person (N.J.S. 2A:119-1) on August 22, 1965. He was sentenced on November 18, 1965 to State Prison for a term of not less *189 than six years, nor more than seven years. In addition, he was ordered to pay a fine of $2,000 and to stand committed until the fine was paid.
At the time of sentence, the State moved to dismiss three other indictments  for robbery, rape and sodomy  which resulted from the same occurrence. The motion was then denied. Subsequently, an order was entered on February 2, 1967 dismissing the other three outstanding indictments.
Defendant took no direct appeal from the judgment of conviction. However, sometime later he applied for post-conviction relief, contending that the $2,000 fine violated the due process and equal protection clauses of the Fourteenth Amendment. The matter was heard before the sentencing judge on December 21, 1967 and decided adversely to defendant. An order denying defendant's application for post-conviction relief was entered on January 16, 1968.
Defendant prosecutes this appeal from that order, as an indigent, with the aid of the Public Defender.
The sole point raised on appeal is that it is a denial of the constitutional guarantees of equal protection and due process of the law, as well as against excessive fines, to sentence an indigent to the maximum term of confinement and a fine, which may readily be paid by a nonindigent but results in further confinement for the indigent because of his inability to pay.
Larceny from the person, N.J.S. 2A:119-1, is a high misdemeanor. The punishment for this crime is regulated by N.J.S. 2A:85-6. It is limited to "a fine of not more than $2,000, or by imprisonment for not more than 7 years, or both." Quite obviously, the sentencing judge in this case imposed the maximum fine and the maximum prison sentence. He had a right to do so, having stayed within the statutory limits.
An appellate court may, nevertheless, revise the sentence if it is manifestly excessive, or unduly punitive in the light of the total circumstances. The power to revise a sentence must be exercised with extreme care. We ought *190 not interfere with the sentence imposed "in the absence of a clear showing of abuse of discretion." State v. Tyson, 43 N.J. 411, 417 (1964). See, too, State v. Brown, 46 N.J. 96, 108 (1965); State v. Ford, 92 N.J. Super. 356, 361 (App. Div. 1966); State v. Johnson, 67 N.J. Super. 414, 424-425 (App. Div. 1961).
We pause at this point to note another important fact, particularly pertinent to the issue presented. The State Parole Board, on March 22, 1968, acted favorably upon defendant's application for parole. It has granted him parole effective March 4, 1969. However, it notes that the $2,000 fine has not been paid and has made as a special condition of his parole:
"After paying $500.00 of your fine in the amount of $2,000.00 or working $500.00 off in the institution at the rate of $5.00 [a day], you will be released to make weekly payments in the amount of $10.00 to the Passaic County Probation Officer until the balance of the fine is paid in full. Such payments are to begin three weeks after date of parole."
In effect, defendant will be confined an additional 100 days after March 4, 1969, the effective parole date, unless on or before then he pays $500.
N.J.S. 2A:166-16 provides that a person confined to prison by reason of default in the payment of a fine, who was ordered to stand committed until the fine is paid, shall be given credit against the amount of the fine at the rate of $5 for each day of confinement, after completing his prison sentence. If he is not being held by reason of any other sentence, he shall be discharged when a sufficient number of days of further confinement, at $5 a day, equals the amount due on his unpaid fine.
The Parole Board has the authority under N.J.S.A. 30:4-123.15 to release an inmate on parole, who has failed to pay the fine imposed, "upon condition that such fine and costs be paid, through the probation office of the county from which the inmate was committed, in weekly amounts, *191 to be fixed by the board." That authority was exercised in the present case, except it was subject to the condition that defendant must pay or work off at the $5 a day rate $500 of the $2,000 fine. Obviously, the board, in the sound exercise of its discretion, could have released defendant from prison to pay off the entire fine through the probation office, in weekly amounts fixed by it. That relief may still be sought and granted. However, we shall presume for further discussion that the terms fixed by the Parole Board will remain, and that defendant faces the possibility, if someone does not come to his financial aid by March 4, 1969 with the $500 to pay on account of the fine, to remain confined for another 100 days beyond the effective parole date.
Does such a further prison confinement to work off a fine at $5 a day deprive an indigent inmate of equal protection or due process of law, or constitute the imposition of an excessive penalty? The Public Defender's argument is that the poor prisoner must stay in jail for an added period of time, as opposed to the financially able inmate who can buy his release by paying the fine.
Defendant relied upon People v. Collins, 47 Misc.2d 210, 261 N.Y.S.2d 970 (Cty. Ct. 1965). Defendant therein was convicted of assault in the third degree and sentenced to the county jail for a term of 11 months and 29 days. The maximum prison sentence for this misdemeanor in New York was one year. He was also fined $250, in default of which he was to be confined at the rate of $1 a day for each dollar of fine unpaid. He challenged the validity of his potential confinement for the additional 250 days, maintaining that it was an unjust discrimination against a man without funds. The Orange County Court agreed and struck from the sentence the unpaid fine. It reasoned that the indigent prisoner, unlike one financially able, did not have the power to control or limit the time of his confinement.
A year later, the New York Court of Appeals was faced with this same general problem in People v. Saffore, 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686 (Ct. App. *192 1966). There, defendant pleaded guilty to a misdemeanor. As noted above, the New York statute fixed a one-year limit as the maximum term of imprisonment for a misdemeanor violation. The trial court, knowing that defendant was an indigent, sentenced him to one year's imprisonment and fined him $500, with the proviso that, if the fine were not paid, defendant would be required to serve one day's imprisonment for each dollar of the fine unpaid. The Court of Appeals held that, when the sentencing judge is cognizant of an individual's inability to pay a fine, subsequent imprisonment in lieu of the fine, which results in imprisonment for more than the permissible maximum prison sentence, violates the defendant's right to equal protection and due process of the law and is proscribed by the Eighth Amendment to the United States Constitution.
The rationale of the Saffore decision is that to order a defendant to stay in prison until he pays a fine, when the court knows that he cannot pay it, is not the use of a lawful means for enforcing payment but is an illegal method of requiring imprisonment beyond the maximum term of imprisonment allowed by the statute. It recognized that imprisonment can validly be used as a method of collection for "refusal" to pay a fine, but "it is illegal so to imprison a defendant who is financially unable to pay." 271 N.Y.S.2d, at p. 974, 218 N.E.2d, at p. 687; emphasis added)
To the same effect, and for the same reason, see People v. Mackey, 18 N.Y.2d 755, 274 N.Y.S.2d 682, 221 N.E.2d 462 (Ct. App. 1966), and People v. Tennyson, 19 N.Y.2d 573, 281 N.Y.S.2d 76, 227 N.E.2d 876 (Ct. App. 1967), holding the portion of the sentence, which required defendant to serve out the unpaid fine at $1 per day, illegal and violative of his constitutional rights.
For the contrary view, see Henderson v. United States, 189 A.2d 132 (D.C. Ct. App. 1963), and McKinney v. Hamilton, 282 N.Y. 339, 26 N.E.2d 949, 951, 127 A.L.R. 1283 (Ct. App. 1940).
*193 It is important to note, however, that the court said in People v. Saffore:
"We do not hold illegal every judgment which condemns a defendant to confinement if he does not pay his fine. We do hold that, when payment of a fine is impossible and known by the court to be impossible, imprisonment to work out the fine, if it results in a total imprisonment [in excess of that provided by the applicable statute] * * * violates the defendant's right to equal protection of the law, and the constitutional ban against excessive fines." (271 N.Y.S.2d at p. 975, 218 N.E.2d, at p. 688; emphasis added)
Thus, the declaration of illegality was grounded upon the fact that the additional confinement in jail to satisfy the unpaid fine effected an excess of imprisonment beyond the statutory limit.
The same rationale was employed in Sawyer v. District of Columbia, 238 A.2d 314 (D.C. Ct. App. 1968).
Recently, in Wright v. Matthews, 163 S.E.2d 158 (Va. Sup. Ct. App., September 6, 1968), it was held that imprisonment of an indigent defendant for failure to pay court costs violates the prisoner's rights under the Thirteenth Amendment, which prohibits involuntary servitude.
Running throughout these cases is the common factor that further confinement for default in payment of a fine, or costs, which extends the term of prison commitment beyond the statutory jail limitation, deprives the indigent prisoner of his constitutional rights.
We have not been referred to any case where confinement by reason of default in payment of a fine, due solely to indigency, has been held unconstitutional, if that additional deprivation of freedom does not extend the imprisonment beyond the statutory limit. Rather, the confinement for failure to pay the fine was deemed to be not in violation of constitutional rights under such circumstances. Thus, in United States ex rel. Privitera v. Kross, 239 F. Supp. 118 (S.D.N.Y. 1965), affirmed 345 F.2d 533 (2 Cir. 1965), cretiorari denied 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965), Privitera was convicted in New York City *194 Criminal Court for illegal possession of lottery slips. This is a misdemeanor punishable by not more than a year in prison or not more than a fine of $500 or both. Defendant was sentenced to prison for 30 days and fined $500. In the event the fine was not paid, he was to serve an additional 60 days' imprisonment. Thus, his total possible confinement to jail was 90 days upon his conviction of an offense for which the permissible maximum prison term was one year.
Privitera completed his 30-day direct prison sentence and sought by writ of habeas corpus in the federal court to be released from the additional 60-day confinement on his default in paying the fine. He claimed that the additional time to be served violated his constitutional rights secured by the Eighth Amendment and the Equal Protection Clause. The federal court denied the writ. It dismissed defendant's arguments as lacking in merit. It noted that his imprisonment term would not exceed 90 days  assuming nonpayment of the fine  whereas the trial judge could have justifiably, in his discretion, sentenced defendant to imprisonment for one year, within the permissible statutory limit. It found wholly beside the point his contention that lack of funds compelled him to remain incarcerated for another 60 days, while another convicted of the same crime and given the same punishment might effect his immediate release after the first 30-day period, if possessed of the $500. It observed:
"Since sentences are individualized, it serves no useful purpose to compare the sentence of this defendant with that of another hypothetical defendant." 239 F. Supp. 120.
In the instant case, the possible confinement of defendant for an additional 100 days to work off the $500 portion of the fine will not result in his imprisonment beyond the maximum statutory prison sentence. Instead of being released on parole on March 4, 1969, he will be detained until June 12, 1969, at most. The seven-year prison sentence imposed in 1965 could have kept him in prison until November 18, *195 1972. Thus, the evil condemned in People v. Saffore and the similar cases, supra, will not materialize here.
Imprisonment in lieu of the payment of a fine has been a generally accepted rule in this country and in our State. N.J.S. 2A:166-16, supra, attests thereto. So does People v. Saffore, supra, wherein the court acknowledged, "We do not hold illegal every judgment which condemns a defendant to confinement if he does not pay his fine." 271 N.Y.S.2d, at p. 975, 218 N.E.2d, at p. 688. United States ex rel. Privitera v. Kross, supra, follows the rule.
In State v. Johnson, 30 N.J. Super. 235 (Law Div. 1954), where defendant pleaded guilty to a charge of drunken driving, the court imposed a fine of $200 and provided that, in default of payment of the fine, defendant should serve 30 days in jail. Defendant failed to pay the fine. It was held that he could properly be required to serve 30 days in jail. The court observed:
"Committing a prisoner to jail until a fine is paid is no part of the punishment. The penalty, or the punishment adjudged, is the fine, and the custody adjudged is the mode of enforcing the payment of the fine. This is in accordance with the common law." (Citing, 15 Am. Jur. 184, § 546, at p. 237)
See, too, 21 Am. Jur.2d 557, § 603, and 36A C.J.S. Fines § 11, p. 443.
In Baucum v. N.J. Parole Board, 68 N.J. Super. 271 (App. Div. 1961), a husband was convicted of refusing to support his destitute wife and children. He was sentenced to a term in State Prison plus a $1,000 fine. He was paroled to pay the fine, in installments. He defaulted. He was returned to prison to "work off" his fine at the rate of $3 per day, as then provided by N.J.S. 2A:166-16. Whether it was defendant's indigency or wrongful neglect which caused the default does not appear in the opinion. The case is noted only as another example of our established policy of confinement for failure to pay a fine. N.J.S. 2A:164-18 is cited as authority therefor.
*196 Should this court accept defendant's position that a state may not impose fines on those unable to pay, so long as the penalty for default is imprisonment, a sentence imposing a fine upon an indigent would mandate a remand for a corrected sentence. The new sentence might then eliminate the fine but provide for a longer prison term within the statutory limits to offset the elimination of the fine. Such a "right" would be "illusory," as the court observed in United States ex rel. Privitera v. Kross, supra, 239 F. Supp., at p. 121.
It would seem appropriate to measure a defendant's ability to pay a fine imposed as of the time when he has served his prison sentence or is eligible for parole therefrom and faces the possibility of further confinement for the unpaid fine. If he is then financially able to pay, there is no reason not to do so. If at that time, he is without funds, there is adequate administrative remedy available to obtain his release on terms fixed by the Parole Board. It is to be presumed that its action will not be arbitrary or capricious. If it is, recourse may be had under R.R. 4:88-8 to this court.
Can we say in this case that the Parole Board was arbitrary when it paroled defendant, effective March 4, 1969, when he might have been detained until November 1972, when only a little more than half of his prison term has been served, even if he is detained until June 1969, another 100 days, because he did not pay $500 on account of his $2,000 fine  a mere one-fourth thereof  and allowed him almost three years thereafter to pay the $1,500 balance, at $10 a week? We think such terms were not arbitrary or capricious, but most reasonable and liberal, considering the gravity of the offense and its aggravating circumstances.
It might well be that further investigation of defendant's financial status as of the effective date of his parole, or shortly prior thereto, might induce the Parole Board to modify further the condition of parole so as to permit his discharge on the effective date upon the payment of the entire fine at a reasonable weekly rate outside prison walls. However, the Legislature has vested that power and discretion *197 in the Parole Board. We ought not interfere, absent a showing of an abuse of discretion by the Board. No such showing has been made. Certainly, the action taken does not, in any event, confine this defendant beyond the statutory prison sentence limit  the rationale employed in cases such as People v. Saffore, supra. We find it unnecessary under the facts herein to decide whether our courts should subscribe fully to the doctrine that a fine may never be constitutionally imposed upon an indigent, if default in its payment will result in some temporary confinement.
The order under review is affirmed.
CONFORD, S.J.A.D. (dissenting).
I hold the view that subjection of an indigent to incarceration as a purported sanction for failure to pay a fine is unconstitutional both as a denial of equal protection of the laws and a deprivation of liberty without substantive due process. I would therefore reverse the order under review and remand the matter to the trial court with directions to hold a hearing, shortly before defendant's forthcoming completion of his term of imprisonment, as directed to be shortened by the March 28, 1968 order of the State Parole Board, on the sole issue of his indigency. I would direct that if then found indigent, defendant be released from confinement, subject to payment of the entire fine of $2,000 in installments under the same parole terms as have been fixed by the Parole Board for the payment by defendant of $1,500 of that amount. If, on the contrary, the defendant were at such hearing found not indigent, and able to pay $500, I would permit the order of the Parole Board to stand.
My position in this matter is not in derogation of the general scheme of our penal statutes in providing for both imprisonment and fines as appropriate sanctions for crime and quasi-criminal conduct. I do not entertain the idea that imposition of a fine is ever unconstitutional merely because of the poverty of the miscreant at sentence. However, without arbitrarily keeping an indigent defaulter in jail for no *198 reason other than his sheer inability to pay a fine, the State can, with greatest probability of realizing the payment, release the defendant on parole to pay the fine in reasonable installments pursuant to the enabling provisions of N.J.S.A. 30:4-123.15. For willful failure to make such payments commitment would follow. Moreover, the State can always avail itself of the statutory remedy of fieri facias to obtain satisfaction of a fine and costs out of any property defendant can at any time be found possessed of. N.J.S. 2A:166-11.
Granting the limited relief outlined above at the behest of one, like defendant, who asserts a right thereto as a matter of constitutional law, would not, of course, preclude the exercise of the option of other indigent defendants who prefer to sit out their fines in jail at the statutory rate of $5 per day and thereby achieve discharge of their pecuniary obligation to the State.
Thus, the continuation of general penological policy that fines be employable as punishment of offenders, even indigent ones, is entirely consistent with this dissent.
The widespread practice of automatic imprisonment of indigent offenders for nonpayment of fines has been roundly deprecated by the leading authorities in this field. "Sentencing Alternatives and Procedures," American Bar Association Project on Minimum Standards for Criminal Justice (Tentative Draft 1967), p. 285 et seq.; Model Penal Code, § 302.2, Proposed Official Draft, (1962); and see Goldberg, "Equality and Governmental Action," 39 N.Y.U.L. Rev. 205, 221 (1964); Greenawalt, "Survey of Constitutional Law," 18 Syracuse L. Rev. 180, 193-198 (1966); Note, 64 Mich. L. Rev. 938 (1966); Note, 101 U. of P.L. Rev. 1013, 1021-24 (1953); Note, 1966 U. Ill. L. Forum 460; Note, 81 Harv. L. Rev. 435, 447-8 (1967); Note, 4 Houston L. Rev. 695, 701 (1967).
After citing cases holding that imprisonment for nonpayment of a fine is not part of the punishment for the offense, *199 but only an enforcement device for nonpayment,[1] the Advisory Committee which drew the A.B.A. report on "Sentencing Alternatives and Procedures," cited above, stated:
"The Advisory Committee would agree with these decisions that imprisonment should be employed only as a method of collecting a fine. It follows from this that imprisonment of an offender who does not have the means to pay  barring the rare but not unknown case of the defendant who deliberately deprives himself of the means to pay  should not be tolerated. Provisions which view imprisonment as a routine response to the failure to pay a fine, or which view imprisonment as an alternative to the payment of a fine, are thus disapproved.
This does not mean, of course, that jail should never be available when a fine has not been paid. The system proposed by the Advisory Committee can be outlined as follows: in the first place, fines should never be levied unless it is reasonably clear that the defendant is going to be able to pay, either immediately or over time. With respect to defendants who cannot or will not be able to pay, a more appropriate sanction should be chosen. With respect to defendants who appear to be able to pay but ultimately do not, the proposal is that there first should be an inquiry into the reason for nonpayment. Only in the case where such a hearing discloses no excuse for nonpayment would jail be an appropriate response. For this class of offenders, which surely must be small in comparison to the numbers now incarcerated, jail is surely an appropriate remedy  not as an alternative or an equivalent to a fine, but as a device to secure payment or as a sanction for the inexcusable failure to pay." (at pp. 288-289; emphasis added)
The American Law Institute, in the proposed Model Penal Code, op cit., follows the same basic philosophy. Section 302.2(1) provides that upon default by a defendant sentenced to pay a fine he must show cause why his default should not be considered contumacious. Only upon the failure of defendant to show that the default was not attributable to willful refusal to pay or to make a good-faith effort to obtain funds therefor is he committable until the fine or a specified part thereof is paid.
*200 In terms of equal protection, it seems to me that preclusion of incarceration for involuntary failure to pay a fine because of poverty is a fair, practicable and logical application of the approach of the line of United States Supreme Court cases following Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). If, as held therein, the State must provide the poor with the same procedural tools purchasable by the moneyed defendant and essential for effective appellate review of criminal adjudications, I regard it as at least equally requisite that the State provide the poor with the same out-of-prison opportunity to meet the cost of a fine which a moneyed defendant enjoys automatically.[2] As cogently stated by former Justice Goldberg in a recent study of the Equal Protection Clause: "The `choice' of paying a $100 fine or spending 30 days in jail is really no choice at all to the person who cannot raise $100. The resulting imprisonment is no more or no less than imprisonment for being poor, a doctrine which I trust this Nation has long since outgrown." 39 N.Y.U.L. Rev., op. cit., at 221.
In terms of substantive due process, I regard it as fundamentally unjust to deprive a person of his liberty for no better reason than that he has not at the moment the wherewithal to pay a fine in full  a result recently described aptly by a New York court as "an archaic system akin to imprisonment for debt." People v. McMillan, 53 Misc.2d 685, 279 N.Y.S.2d 941, 943 (Cty. Ct. 1967).
Strong judicial condemnation of the practice of imprisonment of indigents for nonpayment of fines was recently expressed by the New York Court of Appeals in People v. Saffore, 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686 (1966).[3] There defendant, on a plea of guilt of assault, third degree, was accorded the maximum statutory sentence *201 of imprisonment for one year and a fine of $500, with the latter, if not paid, to be served out at the statutory rate of one day in jail for each dollar of fine. The strict holding of the court was that, as applied to an indigent unable to pay the fine, the sentence was illegal as in effect resulting in imprisonment for a period in excess of the maximum term fixed by statute for the crime (here, one year) (271 N.Y.S.2d, at p. 975, 218 N.E.2d 686). This was reasoned on the theory that imprisonment in default of fine is not a punishment for the crime but only a sanction to compel payment; and that since that sanction was inherently inoperative as against a defendant unable to pay, its imposition, nevertheless, had the illegal effect of enlarging the penal term beyond the statutory maximum.
The result in Saffore was also defended by the court: (1) on "equal protection" grounds (ibid.), which, from the text of the opinion, was based on the ability of a moneyed defendant to avoid the added imprisonment by payment of the fine; and (2) because the fine was an "excessive fine." The court said:
"Defendant would have us put our decision on constitutional grounds. He argues persuasively that under Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, People v. Pride, 3 N.Y.2d 545, 166 N.Y.S.2d 508, 145 N.E.2d 184, and other similar decisions it is a denial of due process and of equal protection of the law to let a defendant's lack of money determine how long he must be imprisoned. The man who can pay and the man who cannot are not treated equally. Another specification of unconstitutionality suggests itself. Section 5 of article I of our State Constitution, like the Eighth Amendment to the Federal Constitution, forbids the imposition of `excessive fines.' There seem to be no controlling decisions on the question of what is an excessive fine (however, see as to `excessive bail' as applied to fines, Douglas, J., Cohen v. United States, 82 S.Ct. 526, 7 L.Ed.2d 518). The phrase `excessive fine,' if it is to mean anything, must apply to any fine which notably exceeds in amount that which is reasonable, usual, proper or just. A fine of $500 for a common misdemeanor, levied on a man who has no money at all, is necessarily excessive when it means in reality that he must be jailed for a period far longer than the normal period for the crime, since it deprives the defendant of all ability to earn a livelihood for 500 days and since it has the necessary effect of *202 keeping him in the penitentiary far longer than would ordinarily be the case." (271 N.Y.S.2d, at p. 975, 218 N.E.2d, at 688)
Saffore was followed, in similar fact situations, in People v. Mackey, 18 N.Y.2d 755, 274 N.Y.S.2d 682, 221 N.E.2d 462 (Ct. App. 1966), and People v. Tennyson, 19 N.Y.2d 573, 281 N.Y.S.2d 76, 227 N.E.2d 876 (Ct. App. 1967). The New York Court of Appeals has not yet, apparently, been squarely faced with the question whether imprisonment of an indigent for default of fine is unconstitutional if the resulting aggregate incarceration is less than the statutory maximum. However, a lower court has since invalidated the in-lieu prison term in such circumstances on grounds inclusive of the concept of denial of "equal treatment under the law." People v. McMillan, supra (279 N.Y.S.2d, at p. 942). That same court (Orange County Court), prior to the decision in Saffore, had reversed the jailing of an indigent for failure to pay a fine of $250, imposed on him along with a prison sentence of 11 months and 29 days, for conviction of assault in the third degree. People v. Collins, 47 Misc.2d 210, 261 N.Y.S.2d 970 (1965). Here, too, although the case on its facts fell within the later narrow holding in Saffore, the decision was rested on equal protection grounds, the court holding that it could not accept the "equation of one day of a man's liberty * * * for every one dollar of the fine." (261 N.Y.S.2d, at p. 973). At about the same time Justice Hopkins was expressing the same view in concurring in the Appellate Division decision of People v. Johnson, 262 N.Y.S.2d 431 (1965).
In Sawyer v. District of Columbia, 238 A.2d 314 (D.C. Ct. App. 1968), in facts similar to Saffore, the court struck down a prison-in-lieu-of-fine provision of a sentence imposed upon an indigent as an abuse of discretion, following the rationale of Saffore. The court said:
"* * * [T]he application of the statute to a person known by the court to be indigent does not compel payment of a fine but rather imposes upon him an additional term of imprisonment. This we *203 have said cannot be done since it subverts the legitimate purpose of a valid statute and it is clear that the statute, so applied, would then present the grave constitutional questions[4] argued here." (at p. 318)
Apparently the only reported decision which, to date, has flatly addressed itself to the issue whether imposition of jail on default of payment of a fine by an indigent constitutes a denial of equal protection where the aggregate resulting period of incarceration does not exceed the statutory maximum, is United States ex rel. Privitera v. Kross, 239 F. Supp. 118 (S.D.N.Y. 1965), affirmed per curiam, o.b., 345 F.2d 533 (2 Cir. 1965), certiorari denied 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965). In that case, the facts of which are set forth in the opinion of the majority, the stated issue was resolved in the negative, but on reasoning which most of the commentators on the decision have rejected as unsound (see infra).
The court dismissed the equal protection argument on two basic grounds: (a) its disregard of the trial judge's right to individualize sentences, thereby precluding the appropriateness of comparison of the sentence of the indigent with that of the moneyed defendant (at p. 120); and (b) the illusory nature of the relief defendant would obtain by invalidation of the sentence, since the sentencing court could then impose a straight jail term equal to or exceeding the aggregate of the 30-day term first imposed and the 60 days additional for default in payment of fine (at p. 121). As to (a), I note and endorse the comment of Professor Greenawalt:[5]
"The flaw in Judge Weinfeld's reasoning is that the trial judge had not exercised his discretion to give the defendant a 90-day sentence or any larger part of a year than 30 days. For whatever reasons, he had thought 30 days appropriate. Yet Privitera was *204 forced to spend 60 days more in jail than other persons with money who, having committed the same offense had also been sentenced to 30 days in jail and a 500 dollar fine. The futility of imprisonment as a device to coerce payment of the fine is just as great as in Saffore and it is also true that `the man who can pay and the man who cannot are not treated equally.' Thus the arguments based on statutory construction and the equal protection clause, which proved determinative in Saffore, are both applicable when the statutory term of imprisonment is not exceeded."
Making essentially the same point are the comments in 64 Mich. L. Rev., op. cit., at pp. 942-943, and 4 Houston L. Rev., op. cit., at p. 700; see also Comment, 16 Buffalo L. Rev. 428, op. cit.
As for (b), referred to above as the second ground of decision in Privitera, supra, it has no relevancy to the merits of the relief I would accord the present defendant. I do not propose that the sentence of the defendant should be set aside  merely that defendant, if found indigent and unable to pay, be relieved of incarceration for involuntary nonpayment of the $500 portion of the fine which the State Parole Board insists be paid in full upon conclusion of service of the stated jail term, and be allowed to pay it, as able, in installments. However, I disagree with any intimation in Privitera, if the opinion is susceptible of such a reading, that establishment of the principle I espouse would be futile and would not benefit future criminal defendants because sentencing judges, knowing that fines against indigents would not be automatically transmuted into added periods of incarceration for nonpayment, would simply increase jail terms rather than impose fines as sole or partial punishment. I confidently rest on the presumption that sentencing judges would continue, in good faith, to allocate to every defendant such penal term and such fine, separately, as they regarded as respectively appropriate in the individual case.
The opinion of the majority sets forth no rationale for distinguishing, in equal protection terms, between confinement of indigents for involuntary nonpayment of a fine *205 when such confinement, added to the prison term, would exceed the statutory maximum, and when it would not. I can conceive of none that deserves any weight. The conceded criterion for validity of legislative classification as against attack on equal protection grounds is whether the classification bears any rational relationship to the objects and purposes of the legislation. As recognized in New Jersey, State v. Johnson, supra, and generally, the object of imprisonment for default in payment of a fine is to compel the payment, not to impose added punishment for the crime. From that standpoint, it is equally arbitrary to incarcerate one not able to pay the fine, where such incarceration, although substantial, will not carry the total imprisonment flowing from the sentence beyond the statutory maximum, as in the instance where it will. In both cases there is unjustifiable discrimination in the effect of the statute as between the defendant able to pay the fine and the one who is not.
As I see it, therefore, if the "equal protection" position suggested in People v. Saffore, supra, is, as I believe it is, soundly reasoned, then the decision in United States ex rel. Privitera v. Kross, supra, is incorrect.
In the present case, the composite, interacting judgment of the State's instrumentalities  the court and the State Parole Board  is that defendant's penal incarceration by way of punishment for his crime should terminate on parole March 4, 1969. If, on that day, solely because of his indigence, he involuntarily defaults in the payment of $500 of the fine and is required perforce of the statute to serve another 100 days in jail, he will have been subjected to such additional imprisonment not for commission of a crime, but solely for poverty, in derogation of his right to equal protection and to freedom from deprivation of liberty without due process.
The Attorney General's expressed doubts as to the defendant's indigence are, to say the least, premature. No issue was raised in that regard at the hearing below, when defendant was represented by assigned counsel. In any event, that *206 question should be remitted for resolution to the hearing which I have indicated above should be held shortly before the effective parole date.
NOTES
[1] Our courts are in accord: State v. Johnson, 30 N.J. Super. 235, 237 (Law Div. 1954).
[2] In this regard see Professor Greenawalt's supporting observations in the article cited above (18 Syracuse L. Rev., at p. 195).
[3] Commented upon in 18 Syracuse L. Rev., cited above, at pages 194-198, and in Comment 16 Buffalo L. Rev. 428 (1966), and Comment, 41 St. John's L. Rev. 628 (1967).
[4] Those questions were equal protection and excessive fines. 238 A.2d, at p. 315.
[5] See "Survey of Constitutional Law," 18 Syracuse L. Rev., ubi cit., at p. 196.