STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. BRIAN LAVELLE, DEFENDANT-APPELLANT.

Argued February 4, 1969—Decided June 30, 1969.

*Mr. Kenneth S. Javerbaum,* Assistant Deputy Public defender, argued the cause for appellant (*Mr. Carl R. Soller,* on the brief; *Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Arthur J. Timins,* Assistant Prosecutor, argued the cause for respondent (*Mr. Leo Kaplowitz,* Union County Prosecutor, attorney).

The opinion of the court was delivered by

FRANCIS, J.   On this appeal defendant Lavelle attacks as excessive a sentence imposed upon him of three to five years in State Prison and a fine of $1,000. With respect to the fine the trial court's direction was that he stand committed until it was paid. He challenges also the ruling of the State Parole Board denying him street parole until he either paid the $1,000 fine or worked it off in continued confinement at the rate of $5 a day. The Appellate Division affirmed the sentence unanimously and the Parole Board

order by a divided vote.[1] Judge Conford in his dissent would remand that part of the case to the trial court for a hearing on the prisoner's indigency. In his view, if such hearing resulted in a finding of indigency, the Parole Board should be directed to parole Lavelle on appropriate conditions for payment of the fine in installments. Appeal was taken to this Court on the basis of the dissent. *R. R.* 1:2–1(b).

On September 30, 1966 defendant pleaded guilty in the Union County Court to an indictment charging him with possession of marijuana in violation of *N. J. S. A.* 24:18–4. The offense is a high misdemeanor punishable in the case of a first offender by a *mandatory* fine not exceeding $2,000, *and* by imprisonment, with hard labor, for a term of not less than two years nor more than 15 years. *N. J. S. A.* 24:18–47(c)(1). On October 21, 1966 when Lavelle appeared for sentence, he made a personal plea for leniency, saying that he had "kicked" the habit of smoking marijuana, and if given another chance he would find regular employment and rehabilitate himself. Being impressed the court imposed a sentence of two to three years in prison and a fine of $250 but suspended the sentence and placed him on probation for three years, during which period he was to pay the fine at the rate of $5 a week.

Less than two months later Lavelle was convicted in the Elizabeth Municipal Court of unlawful use of heroin. He was sentenced to the county jail for six months, but shortly thereafter he was again able to persuade the court to be lenient. Consequently the sentence was suspended and a year's probation was ordered. In granting probation the magistrate gave him an opportunity to rehabilitate himself by undergoing a course of treatment at St. Dismas Center for Drug Addiction in Paterson, N. J. He was ordered to remain there until discharged. Instead, on June 19, 1967

---

[1] This case and *State v. Allen* involving similar issues were argued together and decided the same day. *State v. Allen* is reported in 104 *N. J. Super.* 187 (*App. Div.* 1969). The short *per curiam* opinion in *State v. Lavelle* is based on *Allen* and is unreported.

he left without permission and before discharge. The Director, Monsignor William Wall, advised the county judge that defendant made "little effort toward rehabilitation," and that he needed "a shock to realize the seriousness of his problem."

After leaving St. Dismas defendant was instructed to take out-patient treatment at the Union County Narcotics Clinic. On September 12, 1967 its Director advised that in spite of "every effort toward rehabilitation * * * is evident Lavelle is not motivated toward any type of treatment."

Just two months later, on November 14, 1967, Lavelle was convicted of fraud in the same municipal court. He was fined $100, ordered to make restitution, and again put on probation for one year.

In addition it appeared that he had failed to make the regular $5 weekly payments on the original fine in the county court. At the end of the first year of probation he had made only five weekly payments and still owed $225.

The performance described caught up with him and he was ordered to show cause why the county court probation should not be revoked. On December 8, 1967 the original sentencing judge conducted a revocation hearing, at which Lavelle pleaded guilty to violation of probation, and again sought clemency.

It is obvious from the colloquy between the court and Lavelle and the latter's renewed plea for continuance of probation, that he is an intelligent person and that he had a thorough understanding of the conditions of his probation. This time the judge was not impressed. He felt a very fair chance at rehabilitation had been given and willfully ignored by Lavelle, who no longer could be relied upon to live within the probation conditions or to pay the balance of his $250 fine in weekly installments. Consequently probation was revoked, the original suspended sentence was vacated, and a new sentence of three to five years in State Prison (with credit for the time already spent in confinement) and a fine of $1,000 was imposed. Obviously mindful of Lavelle's past performance, the judge expressly ordered that he remain

committed until the fine was paid. With respect to this sentence it should be noted under *N. J. S.* 2A:168–4 that upon finding the terms of probation have been violated, the court "may cause the sentence [originally] imposed to be executed or impose any sentence which might originally have been imposed." This replacement sentence was well within the penalty of two to 15 years and fine not exceeding $2,000 authorized by *N. J. S. A.* 24:18–47(c)(1) for the crime of possession of marijuana.

The Appellate Division unanimously rejected the claim that this sentence was excessive. We concur in that view and see no need for further discussion of the matter.

While the appeal was pending in the Appellate Division, defendant, having served sufficient time to make him eligible for parole consideration (*i. e.*, the minimum or one-third of the maximum term less good behavior and work credits (*N. J. S. A.* 30:4–123.10)), presented an application to the Parole Board. The Board granted parole from the fixed imprisonment part of the sentence to be effective on January 7, 1969, but subject to the condition that if he was unable to pay the $1,000 fine portion thereof, he would have to work it off in the institution at the rate of $5 a day. Since defendant was indigent and therefore unable to pay the fine, on January 9 he went on so-called cell parole and began to amortize it at $5 a day. The $5 rate of credit is fixed by *N. J. S.* 2A:166–16,[2] which further provides that when "the prisoner shall have been confined for a sufficient number of days to establish credits equal to the total aggregate amount of such fines * * * he shall be discharged from imprisonment * * *."

---

[2] Until a few years ago the statutory rate was $3 a day. In 1961 this Court's Committee on Criminal Procedure expressed the view that it should be considerably higher. (*Report p.* 27). The Legislature increased it to $5 a day. Considering the cost of maintaining a prisoner in confinement and the Parole Board's preliminary finding that he is ready for street parole but for the unpaid fine, further consideration of the adequacy of the $5 per day credit might be in the public interest.

The action of the Parole Board was authorized by *N. J. S. A.* 30:4–123.15, under which if an inmate is eligible for parole "but is required to remain in confinement because of failure to pay a fine * * * the board may release [him] on parole upon condition that such fine * * * be paid, through the probation office of the [appropriate] county * * * in weekly amounts to be fixed by the board."

Defendant claims that since he is an indigent (a fact which we regard as sufficiently shown by the record before us), the order of the Parole Board finding him fit for street parole under *N. J. S. A.* 30:4–123.14, but refusing to release him unless he either pays the $1,000 or works it off at $5 a day denies him due process and equal protection of the law under the Constitution of the United States. More specifically he points out that when the Board granted his application for parole from the imprisonment part of his sentence, to become effective on January 7, 1969, it signified a finding (as the cited statute required) of "reasonable probability" that, if released "he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." And Lavelle argues that since a financially capable prisoner would be released on the parole date upon payment of the fine, his basic rights were violated when he was denied his liberty *solely* because he was indigent and unable to make the payment.

The majority of the Appellate Division recognized that the trial judge was bound by *N. J. S. A.* 24:18–47(c)(1) to punish the defendant for the narcotics offense by a prison term of not less than two years nor more than 15 years *and* a fine not exceeding $2,000. Thus the three to five year sentence plus the $1,000 fine was in response to the command of the statute and constituted the sum of punishment imposed. And as the majority noted, even if Lavelle served 200 additional days in working off the $1,000 fine, his total imprisonment would be less than the three year minimum sentence since he was granted parole (as of January 9, 1969)

after confinement of only a month more than two years; such a period of total confinement was clearly within the maximum imprisonment term of the imposed sentence. For that reason and after a consideration of the totality of the circumstances before the Parole Board, two judges concluded that no showing had been made of discriminatory treatment of defendant or abuse of discretion on the part of the Board in denying street parole on January 7, 1969 unless the fine was paid or worked off.

The dissenting judge acknowledged the legal propriety of crimes statutes which provide for imprisonment or fine or both as punishment for their violation. And he did "not entertain the idea that imposition of a fine is ever unconstitutional merely because of the poverty of the miscreant at sentence." *State v. Allen*, 104 *N. J. Super.*, at 197. But in his view it is a denial of due process and of equal protection *"arbitrarily"* to keep "an indigent defaulter in jail for no reason other than his sheer inability to pay a fine * * *." *Id.*, at 198. And he regarded it "as fundamentally unjust to deprive a person of his liberty *for no better reason* than that he has not at the moment the wherewithal to pay a fine in full * * *." *Id.*, at 200. (Emphasis added). In his judgment an indigent prisoner who is ready for parole in the opinion of the Board should be released subject to the condition that he pay the fine in reasonable installments. Then if he willfully failed to make the payments, commitment would follow to work off the fine or any balance due. Accordingly, as noted above, Judge Conford would order an indigency hearing, and on a finding of indigency would direct the Parole Board to release Lavelle under a reasonable plan for installment payments of the fine.

█ A hearing on indigency is unnecessary. The existence of that state is plain. But indigency *per se* cannot be deemed to require the Parole Board to release Lavelle on condition of periodic part payments of his fine. Such a rule requiring automatic release would invade the legitimate function of the Board, *i. e.*, to exercise its discretion reasonably

in deciding whether and when and in what circumstances parole should be granted. For reasons to be stated we agree with the majority of the Appellate Division that the refusal to order release until the fine was paid or worked off was not shown to be an abuse of discretion.

The controlling statute, *N. J. S. A.* 30 :4–123.15, *supra,* authorizes the Board in its discretion to release an inmate (otherwise eligible for parole under *N. J. S. A.* 30 :4–123.14) with an unpaid fine upon condition that the fine be paid in weekly amounts to be fixed by it. And it further provides for parole revocation for failure to pay in accordance with the terms imposed. Obviously, for a court to invade the province of another branch of the government and require that a prisoner *automatically* be put on the street to pay the fine in installments, simply because he is otherwise eligible for parole, would be to trespass upon the Board's statutorily granted discretionary prerogatives, and to frustrate the legislative purpose in providing for fines — particularly mandatory ones — as whole or part punishment for certain crimes. On the other hand since the determination as to whether prisoners subject to a fine should be released to satisfy it by installment payments is committed to the discretion of the Board, it would be within the statutorily delegated authority for the Board to adopt as a matter of policy and administration a general rule by which all such prisoners (otherwise ready for parole under *N. J. S. A.* 30 :4–123.14) would be released and given a chance to make installment payments. Such a rule (which will come into operation on July 1) would not frustrate the legislative intent exhibited by *N. J. S. A.* 30 :4–123.15. It would represent administrative implementation of that intent by the agency to which the lawmakers had committed its effectuation.

Ordinarily the grant or denial of parole is a matter which rests in the discretion of the parole authority. It is not a judicial function. Under the statute the minimum sentence or the designated portion of the maximum sentence merely signifies the period after which the convict is eligible

for parole; he is not automatically released at the expiration of the minimum term, but merely becomes eligible for parole consideration at that time. *White v. Parole Board,* 17 *N. J. Super.* 580 (*App. Div.* 1952); *Faas v. Zink,* 48 *N. J. Super.* 309 (*App. Div.* 1957), affirmed 25 *N. J.* 500 (1958); *In re Fitzpatrick,* 9 *N. J. Super.* 511 (*Law Div.* 1950), affirmed 14 *N. J. Super.* 213 (*App. Div.* 1951); *Zink v. Lear,* 28 *N. J. Super.* 515 (*App. Div.* 1954).

When Lavelle had served a sufficient portion of his specific imprisonment sentence to make him eligible for parole consideration, the exercise of the Board's discretion in two areas was required. First, whether his record was conducive to a reasonable belief that his release would not be incompatible with the welfare of society. Second, whether he could be relied upon reasonably to make a good faith effort outside the prison walls to pay his fine in weekly installments. Following a hearing, the Board undoubtedly concluded that if it were not for the unpaid fine, he qualified for parole. However, it is also obvious from the record that on the basis of his previous performance on probation, the Board decided he was a poor risk for release since he could not be relied upon to make a good faith effort to pay his fine.

We have recounted above how Lavelle, an intelligent person, failed to take advantage of the opportunity to be at large on probation and to perform as a responsible citizen. Instead he continued in criminal activity in spite of two additional grants of probation, and he failed over a period of a year to pay more than $25 of his then existing $250 fine. More than that, he failed to work regularly, not because he was unable to do so or that employment was unavailable, but because he was not really interested in regular employment. The probation reports, copies of which must be filed with State Prison upon a defendant's confinement there, *R. R.* 3:7–10(b), show that Lavelle on many occasions described himself as a non-conformist with regard to most of the current behavior standards. The probation officer charged with his supervision reported that Lavelle "diligently

avoided regular employment where his hours and earnings could be accounted for" and "preferred work as a caddy." (He had graduated from high school and had some college education.) He was told by the officer on many occasions that such employment was unsatisfactory, and on one occasion he was referred to a plastics company in Union County for regular work. The officer was informed that he reported for work in an intoxicated condition. The foreman gave him the opportunity to return the following night to begin work, but he never came back or otherwise communicated with the company. Later he showed no interest upon being referred to the United States Employment Service for job-training. In conclusion the probation officer advanced the opinion that the "defendant appears as one dedicated firmly to a way of life which continues to preclude any possibility of satisfactory adjustment * * * under the prevailing rules of probation as ordered by this Court." These reports as well as the county judge's personal contact satisfied him that Lavelle consciously avoided regular employment that would put him in a position to pay the $5 weekly installments on his original fine of $250.

The Parole Board was clearly aware of Lavelle's history as we have just outlined it, particularly his work record, his attitude toward regular employment, and his failure to accept the opportunity given to him by the county court to satisfy the $250 fine by moderate weekly payments. It studied his case and "all relevant factors" on two occasions and in the exercise of its experienced judgment decided not to release him until he satisfied the $1,000 fine at the rate of $5 for each confinement day after January 7, 1969. Obviously, the Board concluded he would not make a good faith effort to obtain and keep regular employment or to pay his fine. The treatment accorded Leon K. Allen by the Board and the reasons therefor may be contrasted with that given Lavelle. See *State v. Allen*, 54 *N. J.* 311 (1969) also decided this day.

■ Under all the circumstances revealed by the record it cannot be said that Lavelle was denied street parole *solely* because of his indigency. Courts must give great weight to the expertise of the Board in dealing with parole decisions. They should not intervene unless it clearly and convincingly appears that the Board abused its discretion. No such showing has been made here. Accordingly, we see no problem of constitutional dimension in the case, and consequently no necessity to discuss the issue as framed in the dissent in the Appellate Division. Such question is reserved for consideration in a more appropriate setting.[3]

Since the argument of this case the Parole Board on June 2, 1969 adopted a general rule to be applied hereafter in connection with the parole of inmates of State penal institutions who have unpaid fines at the time they are found otherwise eligible for parole. Under the rule, to become effective July 1 "all [such] fine cases, upon proof of indigency will be paroled upon condition that the fines be paid in installments in the community." It appears also that Lavelle will have worked out his fine on July 21, 1969. We assume that on July 1 the Board will reconsider Lavelle's situation and decide whether to give him the option of devoting the remaining 20 days to the complete discharge of the balance of his fine, or of being released to pay off the remaining $100 in reasonable weekly installments.

For the reasons indicated the judgment of the Appellate Division is affirmed.  ◦

WEINTRAUB, C. J. (concurring). I join in the opinion of Mr. Justice Francis but add some comments.

---

[3] We note in this regard that several courts in somewhat related contexts have held that no denial of constitutional rights is involved when an indigent defendant is imprisoned to satisfy payment of a fine. *Wade v. Carsley*, 221 *So.* 2*d* 725 (*Miss. Sup. Ct.* April 14, 1969) ; *People v. Williams*, 41 *Ill.* 2*d* 511, 244 *N. E.* 2*d* 197 (*Ill. Sup. Ct.* 1969) ; *United States ex rel. Privitera v. Kross*, 239 *F. Supp.* 118 (*S. D. N. Y.*), affirmed 345 *F.* 2*d* 533, *certiorari* denied 382 *U. S.* 911, 86 *S. Ct.* 254, 15 *L. Ed.* 2*d* 163 (1965) ; but *cf. People v. Saffore*, 18 *N. Y.* 2*d* 101, 271 *N. Y. S.* 2*d* 972, 218 *N. E.* 2*d* 686 (1966).

A misconception seems to float vaguely in this area that a "fine" is a debt and that to imprison an offender because he lacks funds to pay a fine is akin to imprisonment for debt. A fine, no less than a jail term, is punishment, and is imposed in the hope that it will correct the offender and deter him and others from transgressing. If the offender, because of indigency, cannot be thus stung through his pocketbook, the only alternative may be imprisonment. If that is so, he is jailed, not because he is indigent, but because he committed an offense and there is no other way to reach and reshape him. I see no constitutional obstacle to that result unless it can be maintained that an indigent is constitutionally entitled to commit with impunity any and every offense for which a man of means would be merely fined.

Indeed, a man of wealth may well be jailed for a wrong for which a stiff fine would suffice in the case of a man of moderate means, if the sentencing judge concludes the offender, because of his wealth, would be unimpressed by a dollar penalty; and an offender jailed on that account would be imprisoned, not because he has worldly goods, but because he committed an offense and there is no other way to achieve the aims of punishment. *Cf. State v. Ivan*, 33 *N. J.* 197, 202–203 (1960).

Nor is it accurate to say that a man might be held beyond the authorized maximum jail term if he remains in jail because a fine has not been paid. The authorized maximum is the authorized maximum jail term *plus* the period of time for which, by statute, an offender may be held if the authorized fine is not paid.

Nor is it correct to say that the purpose of imprisonment for nonpayment of a fine is to "compel" its payment. Obviously that is not so. The offender is not held in custody until the fine is fully paid. On the contrary, the fine is liquidated by the imprisonment, and far from yielding payment, such imprisonment results in the loss to the State of both the fine and the cost of the additional confinement. The point to be remembered is that the in-lieu-of imprisonment is substituted punishment to achieve a punitive aim that could not be at-

tained by way of a fine. The statute provides for the liquidation of a fine by time in jail precisely because the fine is intended to punish. Indeed, it would be intolerable to jail an indigent offender until the fine is paid without reduction for the period of detention, for that would smack of imprisonment for nonpayment of a debt rather than of punishment for the penal misdeed.

Again upon the erroneous thesis that the offender is being imprisoned for nonpayment of a debt, it could be argued that he ought never be jailed unless his failure to pay is found to be "wilful." But the concept of a "wilful" failure, applicable when a defendant in a civil matter is jailed for noncompliance wtih a court order, does not fit into the scene before us. The difficulty of defining and applying a concept of wilfulness to a prison population must be evident. Further, if the failure to pay is not wilful, then what? Should the offender remain free even though the effort to correct him by a fine has failed because he is economically immune?

When a sentencing judge imposes a fine, with or without a jail term, he thereby determines that the pain of the fine must be experienced to achieve the purpose of the punishment of the prisoner. So too when a parole board concludes the time served plus the payment of the fine will suffice. It is wrong to assume, as I think the dissenting opinion does, that the board here found the aims of punishment had been realized and became a mere collection agency pursuing an unpaid debt. Rather we should assume the board understood the values involved and expected the prisoner to experience the economic hurt, or its jail-time equivalent, as a necessary precondition for a release compatible with the welfare of society.

This is not to say that installment payments should not be permitted. If the goals of punishment can be reached in that way, of course they should. But it would be wrong for this Court to say the statute or the Constitution grants to all prisoners an automatic right to be released, to be returned only if they "wilfully" fail to pay. This would be

an unrealistic approach to the problem. It makes more sense to leave the subject with the parole board for its evaluation of the likelihood of successful punishment by installment payments. I would not assume that a failure to release a man upon an installment program must be arbitrary.[1]. And, of course, a decision not to do so in a particular case hardly raises a "constitutional" issue.

A fine being intended as punishment, the Legislature understandably provided for a jail-time equivalent. I agree with Mr. Justice Francis that the Legislature could well review periodically the daily dollar-rate of substituted jail time. And it should be remembered that any statutory dollar equation can be no more than a rough approximation of the relative punitive stings, and hence it would be fiitting to permit both the sentencing judge and the parole board to decide in any given case that the statutory formula is inappropriate and that a lesser substituted jail time would suffice.

PROCTOR, J. (dissenting). The defendant in this case is being denied his constitutional right to equal protection of the laws, and therefore I dissent essentially for the reasons expressed by Judge Conford in his dissenting opinion in *State v. Allen,* 104 *N. J. Super.* 187, 197 (*App. Div.* 1969). I have no quarrel with the part of the majority opinion, and the thrust of the concurring opinion, that "A fine, no less than a jail term, is punishment, and is imposed in the hope that it will correct the offender and deter him from transgressing again." My objection is not that an indigent is being fined. I object to keeping an indigent in jail after the Parole Board has determined that "there is reasonable probability * * * he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of so-

---

[1] So, too, I will not assume that the board's new rule, apparently providing for release and installment payments in all cases, constitutes an improper exercise of the board's discretion. I do not know enough about the proposed implementation of that rule to judge it.

ciety." *N. J. S. A.* 30:4–123.14. Since in this case a determination has been made that after serving a part of his prison sentence the defendant is a fit subject to return to society under conditions of parole, *N. J. S. A.* 30:4–123.15, he was prevented from so doing solely because of his indigency. (I am assuming, as does the majority, that the Parole Board had jurisdiction in this case to review Lavelle's status; that is, I assume he had served his minimum sentence or one-third of the maximum and was therefore eligible for parole if the Board found him to be sufficiently rehabilitated. *N. J. S. A.* 30:4–123.10; *State v. Cooper,* 54 *N. J.* 330 (1969). It is therefore irrelevant what the trial judge said concerning the fine at the time of sentence.)

The majority characterizes the Parole Board decision as follows: "not to release him [Lavelle] until he satisfied the $1,000 fine at the rate of $5 for each confinement day after January 7, 1969." (*Id.,* at *p.* 324). However, the Board's order would have permitted Lavelle's instant release if he were fortunate enough to have $1,000 available through friends or family. There is nothing in the record to show that the Parole Board ever intended that Lavelle continue to be incarcerated if he could have raised the money.

The majority has concluded, however, that Lavelle's unreliability in the payment of a previously imposed $250 fine provides justification for his incarceration beyond January 7, 1969. But evidence of prior unreliability cannot be permitted to override, at this point in the case, the decision of the Parole Board that Lavelle was sufficiently rehabilitated to permit his reentry into society. Consideration of prior unreliability should be in the sole purview of the Parole Board, since it is in the best position to determine whether incarceration has had a rehabilitating effect on all aspects of the defendant's character. There is no evidence in the record to show that the Parole Board ever intended that, due to prior unreliability, Lavelle is not fit to return to society until the fine is paid off. It was solely Lavelle's lack of funds that was keeping him in prison after January 7, 1969. A prisoner, rich or

poor, who has been found fit to return to society under conditions of parole should be given an opportunity to pay his fine in installments while he is at liberty. The rule adopted by the Parole Board on June 2, 1969, and cited in the majority opinion, at p. 325, is consistent with this conclusion,

As I see this case, a man is being held in prison, even though he has been declared by an official organ of the state to be ready to return to society, and solely because he cannot command the capital to pay for his freedom. To permit such a result is to make our system of laws vulnerable to the ironic comment of Anatole France that "The law in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread." *Le Lys Rouge*, ch. 7.

JACOBS and SCHETTINO, JJ., join in this dissent.

*For affirmance*—Chief Justice WEINTRAUB and Justices FRANCIS, HALL and HANEMAN—4.

*For reversal*—Justices JACOBS, PROCTOR, and SCHETTINO — 3.