Dr. Haydee KORT, Superintendent of the Colorado State Hospital and Employees of the Colorado State Hospital, Petitioners-Appellants,

v.

Honorable Lynne F. HUFNAGEL, District Judge, District Court in and for the City and County of Denver, and Honorable Thomas C. Levi, District Judge, District Court in and for the County of Arapahoe, Respondents-Appellees.

No. 85SA100.

Supreme Court of Colorado, En Banc.

Dec. 15, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn Lievers, Asst. Atty. Gen., Denver, for petitioners-appellants.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for respondent-appellee Hufnagel.

Robert R. Gallagher, Jr., Dist. Atty., Eighteenth Judicial Dist., James C. Sell, Chief Deputy Dist. Atty., Littleton, for respondent-appellee Levi.

VOLLACK, Justice.

In this consolidated appeal, we are asked to determine whether a district court may issue an order which prohibits the transfer of a defendant, who is in the custody of the Department of Institutions, to any setting other than a maximum security setting

within the Colorado State Hospital. We hold that such an order violates constitutional separation of powers and was issued without subject matter jurisdiction. Therefore, we reverse.

## I.

On January 11, 1984, nunc pro tunc January 4, 1984, Denver District Court Judge Hufnagel, sitting as the trier of fact, found the defendant, Marvin A. Trinklein, not guilty by reason of insanity for the crime of murder in the first degree. Consistent with its findings, the court entered a judgment of insanity and committed the defendant, pursuant to section 16–8–105(4), 8A C.R.S. (1986), to the custody of the Department of Institutions until such time as he is found eligible for release.

On January 12, 1984, Judge Hufnagel entered a supplemental order directing Dr. Haydee Kort, Superintendent of the Colorado State Hospital, her successor, and any agents or employees of the Colorado State Hospital treating the defendant, that she: shall not transfer said Defendant from a maximum security setting at the Colorado State Hospital or within the Department of Corrections to any less secure setting, except in case of a bona fide medical emergency or transport to court, *unless* the following courts and attorneys are *notified* and given no less than 45 days to object to said transfer: [listing of courts and attorneys omitted].

If any objection is made to the transfer of the Defendant to less than a maximum security setting, *no transfer shall occur unless and until ordered* by the District Court in the Judicial District where objection was made, following hearing, notice of which is given to all parties.

This order is entered based upon psychiatric evaluations of the Defendant conducted in 1983 stating grave concern for several people if the Defendant were released or escaped from a secure setting.[1]

1. The respondents-appellees' statement of the cases contains certain information outside the

(Emphasis added.) On or about June 22, 1984, the People filed a motion to vacate the supplemental order, which was argued and denied on September 14, 1984.

During this same period of time, the defendant was charged with the offenses of criminal attempt to commit murder in the first degree and assault in the first degree in Arapahoe County. On February 10, 1984, nunc pro tunc January 19, 1984, Arapahoe County District Court Judge Levi entered a verdict of not guilty by reason of insanity of the crimes charged and entered a judgment committing the defendant to the custody of the Department of Institutions until such time as he is found eligible for release.

On January 19, 1984, Judge Levi issued a supplemental order restricting the transfer of the defendant within the Colorado State Hospital and the Department of Corrections. The supplemental order is identical in form and substance to that entered by the Denver District Court, except for the listing of some attorneys.

The People moved to vacate this order on or about June 22, 1984, which was argued and denied on September 13, 1984. The trial court did modify the supplemental order to restrict the transfer of the defendant within the Department of Institutions as opposed to the Department of Corrections. The court also noted before the defendant could be transferred to a less secure setting than maximum security that "due process and notice to be heard is forthcoming, and we can have a full hearing to determine if it is in fact appropriate...."

Neither court cited any constitutional or statutory authority for its restrictive orders. Both courts concluded that the restrictive orders were within the "inherent power" of the court. The People appeal the consolidated cases.

## II.

The statutory authority to commit a defendant to the custody of the Department of Institutions is section 16–8–105(4), 8A C.R.S. (1986), which reads:

(4) If the trier of fact finds the defendant not guilty by reason of insanity, the court shall commit the defendant to the custody of the department of institutions until such time as he is found eligible for release. The *executive director* of the department of institutions shall designate the state facility at which the defendant shall be held for care and psychiatric treatment and *may transfer the defendant* from one institution to another *if in the opinion of the director it is desirable to do so* in the interest of the proper care, custody, and treatment of the defendant or the protection of the public or the personnel of the facilities in question.

(Emphasis added.) No statutory provision authorizes the court to review or otherwise substitute its judgment for that of the director of the Department of Institutions regarding the transfer of a patient from one institution to another. The respective district courts contend that while the statute is clear that a court is prohibited from interfering with the discretionary power to transfer a defendant *between* institutions, the statute is silent as to the transfer *within* the institution, and that the court may use its "inherent power" to monitor the transfer of a defendant within the Department of Institutions. We disagree with the courts' interpretation of the statute and with their use of inherent powers.

The district courts clearly had statutory authority and subject matter jurisdiction to place the defendant in the custody of the director of the Department of Institutions. § 16–8–105(4), 8A C.R.S. (1986). It is equally clear, however, that section 16–8–105(4) provides the director of the institution with discretion to transfer a patient from one institution to another. It necessarily follows that this statutory discretion implies a similar power of the director, or her appointed designee, to transfer a pa-

record. The parties are bound by the records made at the hearings on the People's motions to set aside the supplemental orders and cannot

add facts and conclusions from other sources to bolster their position.

tient within an institution from one treatment unit to another. The district courts' interpretation to the contrary is unpersuasive. There is no indication from the statutory scheme, relating to the commitment of persons found not guilty by reason of insanity, that the legislature intended a trial court to undertake supervision of the Department of Institutions or to override a department treatment decision to transfer a patient to a less restrictive setting than maximum security within the institution.

The inherent powers which courts possess consist of:

[A]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court *is*, therefore it has the powers reasonably required to act as an efficient court.

*Pena v. District Court*, 681 P.2d 953 (Colo. 1984) (emphasis in original). While courts may properly invoke the inherent powers doctrine to compel appropriations or expenditures of funds for judicial purposes, the inherent powers of courts are not unlimited. The public interest requires that the three branches of government work cooperatively and in harmony. *Id.* at 957. The doctrine of separation of powers imposes upon the judiciary a proscription against interfering with the executive or legislative branches and operates to prohibit the judiciary from preempting an executive agency from exercising powers properly within its own sphere. Colo. Const. art. III; *Colorado State Department of Health v. Geriatrics, Inc.*, 699 P.2d 952, 959 (Colo.1985); *Conrad v. City and County of Denver*, 656 P.2d 662 (Colo. 1982).

The district courts' orders surpassed the scope of a court's inherent powers. In *Pena* we stated: "The need which causes a court to invoke such powers must be reasonably necessary for its proper functioning." 681 P.2d at 957. The supplemental orders bear no relation to the proper func-

tioning of the courts. There is no constitutional or statutory provision authorizing the district courts to limit or review the treatment decisions of the director of the Department of Institutions. Courts do not have jurisdiction to interfere with the executive branch of the government in the performance of its statutory duties. *State Board of Cosmetology v. District Court*, 187 Colo. 175, 530 P.2d 1278 (1974); *Moore v. District Court*, 184 Colo. 63, 518 P.2d 948 (1974). We hold that the district courts' supplemental orders violated the separation of powers mandated by article III of the Colorado Constitution and that they lacked subject matter jurisdiction.

The supplemental orders are reversed.