**Coy Arthur HILL, Petitioner–Appellant,**

v.

**Dan REYNOLDS; Attorney General, State of Oklahoma, Respondents–Appellees.**

**No. 91–5013.**

United States Court of Appeals, Tenth Circuit.

Aug. 23, 1991.

Coy Arthur Hill, pro se.

Robert H. Henry, Atty. Gen. of Oklahoma, Sandra D. Howard and Alecia A. George, Asst. Attys. Gen., on the brief, for respondents-appellees.

Before ANDERSON, TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Petitioner Coy Arthur Hill seeks our review of the district court's dismissal of his habeas corpus petition for failure to exhaust state remedies. We reverse and re-

mand for a consolidated hearing with two recent cases raising similar issues.[1]

Hill timely filed a notice of appeal from his conviction in March 1988 and the state court assigned him counsel to perfect his appeal. Hill's state-appointed counsel filed a petition in error in September 1988. In November of 1988, Hill's counsel requested and received the first of seven extensions to file the brief in Hill's criminal appeal. The Appellate Public Defender handling Hill's case premised these extensions on "an extremely heavy caseload" and consequent inability to review the record in Hill's case. In a letter responding to one of Hill's letters, counsel indicated he had completed briefs in several cases docketed after Hill's because the court had ordered him to do so. In December 1990, two years and nine months after the notice of appeal was filed and counsel appointed, the state Appellate Public Defender filed Hill's appellate brief.

The record indicates that during this period, Hill wrote several letters to the Appellate Public Defender's Office seeking to expedite his state appeal. These letters evince Hill's frustration with that office's inaction and unresponsiveness. Hill included with one of these letters a pro se appellate brief and a request that counsel withdraw so Hill could pursue his own appeal.

Hill contends the state's delay in adjudicating his appeal constitutes a violation of his right to due process and excuses him from the requirement that he exhaust his state remedies before seeking federal habeas corpus relief. The district court rejected this argument, apparently holding the delay in filing Hill's brief was due to a strategy decision by Hill's counsel and was not inherent in the appeals process. The district judge held delay in itself does not constitute a violation of due process rights. We reach Hill's appeal of the dismissal of his federal habeas petition three years and four months after he filed his notice of appeal in the Oklahoma Court of Criminal

Appeals. Hill's state court appeal is still pending.

We review the district court's factual findings for clear error. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting Fed.R.Civ.P. 52(a)). We review the court's legal conclusions de novo. *In re Ruti–Sweetwater,* 836 F.2d 1263, 1266 (10th Cir.1988).

*Prefiling Delay*

This case is governed, in part, by our recent decision in *Harris v. Champion,* 938 F.2d 1062 (10th Cir.1991). In that case petitioner Harris sought to appeal his state criminal conviction in the northern district of Oklahoma. Approximately one year after his application for late appeal was granted, Harris received a letter from the Appellate Public Defender notifying him his brief would not be filed for at least three years. *Harris,* at 1064. Shortly after receiving this letter, Harris filed a petition for federal habeas corpus alleging the Appellate Public Defender's delay in filing his brief constituted a due process violation and excused the normal exhaustion of remedies requirement. *Id.* at 1064. The district court dismissed the petition without prejudice, holding Harris had failed to exhaust his state remedies because his appeal was pending in the state criminal appellate court. *Id.* at 1064. Harris appealed the dismissal to this court.

On appeal, respondents in *Harris* argued Harris should not be excused from the exhaustion requirement because the delay was due entirely to the extensions granted Harris' counsel. *Id.* at 1065. We rejected this argument because the letter from Harris' state-appointed counsel indicated he was "unable to address petitioner's case in a timely fashion." *Id.* We further noted "the record suggests that this delay has been endorsed and made possible by the willingness of the Oklahoma Court of Criminal Appeals to grant the lengthy continuances requested by the Appellate Public

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defender's Office." *Id.* at 1065. We therefore refused to attribute the delay to the indigent petitioner, who had neither caused nor condoned it. *Id.* at 1065–66. We held in those circumstances the delay must be attributed to the state. *Id.*

We did not fault the Appellate Public Defender's Office for creating the delay; but we concluded the overwhelming caseload in that office was not sufficient justification for withholding federal relief when a petitioner complains of that very delay. *Id.* at 1065–66. After noting the exhaustion requirement is a matter of comity, not jurisdiction, *id.* at 1065–66, we concluded:

> It is the duty of *the state* in this case to provide effective and adequate counsel that will ensure indigent convicts a timely direct appeal. Petitioner has alleged facts not controverted by the state, which are sufficient to constitute an excuse from his having to further exhaust state remedies.

*Id.* at 1066 (emphasis added). Although we held Harris need not exhaust state remedies before petitioning for federal habeas relief, we left the resolution of his due process claim to the district court. *Id.* at 1067 n. 5.

Part of Hill's petition complains of the same type of delay in the same state criminal court system as *Harris.* Hill experienced delays in having the same Appellate Public Defender's Office file his state criminal appellate brief. We find no support in the record for the finding of the court below that these delays resulted from the strategic planning of Hill's counsel. We therefore cannot uphold the district court's characterization of the extensions as "strategy" —necessity born of desperation, perhaps, but not strategy. As in *Harris,* the record uncontrovertedly reveals these delays were the result of an overwhelming caseload in the Appellate Public Defender's office and of the Oklahoma Court of Criminal Appeals extending the filing deadline. Following *Harris,* we refuse to attribute this delay to Hill. *See also· Richards v. Bellmon,* 941 F.2d 1015, 1017 (10th Cir., 1991) (citing *Manous v. State,* 797 P.2d 1005 (Okla.Crim.App.1990) in which the Oklahoma Court of Criminal Appeals noticed the significant delay in the Appellate Public Defender System).

Respondents on appeal seek to disown the district court's finding that the extensions were a strategic maneuver by Hill's counsel. Respondents claim that in context, the court merely meant to distinguish the actions of the Appellate Public Defender's Office from those of the state court corrective process. Appellee's Brief at 9. *Harris* refutes respondents' proffered interpretation of the district court's comments. In *Harris* we noted the delay was caused not only by an overworked public defender seeking extensions, but also by the Oklahoma Court of Criminal Appeals granting them. In *Harris* we held *the state* accountable for this type of delay because the petitioner had not caused or condoned the delay. *Harris,* at 1065–66. Hill alleges the same scenario, so the respondents' attempt to distinguish between the actions of the public defender and the "state corrective process" is illusory.

█ We reverse the district court's holding that the delay in filing Hill's state appellate brief does not excuse Hill from exhausting his state remedies. The distinction that *Harris* involved a four-year delay and Hill had to wait two years and nine months is not material in these circumstances. As we noted in *Harris,* we have previously held a fifteen-month delay elicits "'grave concerns in the realm of due process,'" *Harris,* at 1066 n. 3 (quoting *Prescher v. Crouse,* 431 F.2d 209 (10th Cir.1970)); and we have held an eighteen-month delay warrants a hearing to determine whether the delay is inordinate or inexcusable, *see Way v. Crouse,* 421 F.2d 145, 146 (10th Cir.1970). We are convinced the delay Hill faced in having a direct appeal filed proves his state remedies ineffective. *See Harris,* at 1069.

*Postfiling Delay*

Hill's petition seeks relief not only from the delay in filing his brief but in the entire adjudicative process, and on remand the district court should consider what part of the whole period of delay caused by the

state may have violated Hill's right to due process. As the district court observed, we have held the mere passage of time in adjudication of a case does not constitute denial of a constitutional right. *Jones v. Crouse,* 360 F.2d 157, 158 (10th Cir.1966). Only passage of an inordinate amount of time triggers due process concern. *Id.; see also Barker v. Wingo,* 407 U.S. 514, 530–31, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972); *DeLancy v. Caldwell,* 741 F.2d 1246, 1246–47 (10th Cir.1984). The appellate process inevitably takes some time. The rules of appellate procedure provide certain periods for filing opening and response briefs. Rules of the Okla.Ct. of Crim.Apps. 3.4(B), (C). The rules also recognize some extensions of these periods can be necessary. *Id.,* Rule 3.4(D). Similarly, once all the briefs are filed, the court needs time to prepare for and schedule the hearing of a case. These periods may constitute "delay" from the petitioner's perspective; but, if reasonable, they are not "inordinate."

██ Following *Harris,* we hold the district court must review the period before the brief was filed for a due process violation without assuming either that the delay may be attributed to Hill or that responsibility for the delay can be divided between the public defender's office and the state court. The prefiling delay is attributable to the state in this case. Hill's case differs from *Harris,* however, in that here the petitioner's brief has been filed in the Oklahoma Court of Criminal Appeals. The period after Hill's brief was filed to the present entails a continuing delay in the adjudication of Hill's appeal, but not all of this period can be cumulated with the prefiling period and attributed to the state. If respondents took no longer than the rules normally allow to file their brief,[2] this period cannot be considered inordinate delay attributable to the state. *Cf. Mucie v. Missouri State Dept. of Corrections,* 543 F.2d 633, 635–36 (8th Cir.1976) (because state took over one year to file response to petition for postconviction remedy, petitioner excused from exhaustion requirement).

Also, because some, if not all, of the period after Hill's brief was filed is reasonably necessary for the court to prepare for and schedule adjudication of Hill's case, the district court will have to determine whether any of the delay in this part of the process is inordinate. Thus, although the time after Hill's brief was filed is part of the delay Hill faces, only some of this period can be attributed to the state, and even less can be considered inordinate.

The district court is not without guidance in determining whether this delay is inordinate. In *Barker,* the Supreme Court outlined the factors a court should consider to decide whether a defendant's right to a speedy trial has been violated. 407 U.S. at 530–33, 92 S.Ct. at 2191–93. In *DeLancy,* we adopted this format for determining whether a defendant has been denied due process in the timely adjudication of an appeal. 741 F.2d at 1248 (citing *Rheuark v. Shaw,* 628 F.2d 297, 303 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981)); *see also Harris,* at 1067–68.

As in *Harris,* we leave the determination of the due process claim and the fashioning of any appropriate remedy to the sound discretion of the district court. *Harris,* at 1067 n. 5, 1067–71. We reiterate the concern we expressed in *Harris* regarding the situation in the Appellate Public Defender's Office. Although we recognize the courts cannot cure the overstaffing problems, *see Manous,* 797 P.2d at 1005, we must examine the constitutional issues these problems raise. We cannot require exhaustion of state remedies when the failure to exhaust is itself linked to the constitutional claims. *Harris,* at 1065–66, 1068–69. The solution lies with the state of Oklahoma. All members of the bar of that state share responsibility for providing adequate representation for indigent defendants. Involvement of the state bar could provide a constructive step toward resolution of this problem. Ultimately, however, the state itself is responsible for any constitutional deprivations the district court may find. If, for example, the district court finds the delay

---

2. Any extensions respondents may have ob-

tained should be evaluated following *Harris.*

in filing briefs is inordinate, assessment against the state of costs and possibly even attorneys' fees could be part of an appropriate remedy. We discussed at length the problems of fashioning a remedy in *Harris*, and that discussion should amply guide the district court should it find a remedy necessary. *See id.* at 1068–71.

We REVERSE and REMAND the order dismissing the petition for a consolidated hearing with *Harris v. Champion* and for determination consistent with this order.