**Larry A. FIELDS, Director, Oklahoma Department of Corrections, Petitioner,**

**v.**

**The Honorable Willard L. DRIESEL, Jr., District Judge of the District Court within and for McCurtain County, State of Oklahoma, Respondent.**

**No. P 96–817.**

Court of Criminal Appeals of Oklahoma.

June 3, 1997.

## ORDER LIFTING STAY AND GRANTING WRIT OF PROHIBITION

This proceeding arises from the criminal conviction of Wilford Lawrence "Pete" Cherry in McCurtain County District Court, Case Number CRF–96–5. Cherry pled guilty on February 5, 1996 to Unlawful Delivery of a Controlled Dangerous Substance (Cocaine), in violation of 63 O.S.1991, § 2–401(B)(2), and was sentenced to a term of imprisonment in the Oklahoma State Penitentiary for twelve (12) years with the last five (5) years suspended. Cherry was transported to the Lexington Assessment and Reception Center (LARC) and received by the Department of Corrections. Thirty-two (32) days later, Cherry was assigned to the Electronic Monitoring Program (EMP), released from LARC, and placed under the supervision of a Department of Corrections' probation and parole officer.

On March 19, 1996, the Honorable Willard L. Driesel, District Judge, issued an *Order to Comply* in Cherry's criminal case, ordering Petitioner Fields to either furnish the District Court with proof that Cherry was not assigned to EMP, to take Cherry into immediate custody and imprison him, **or** to personally appear on April 8, 1996 and show cause why Petitioner should not be held in contempt of court for failing or refusing to comply with the Judgment and Sentence imposed by the District Court on February 5, 1996.

Petitioner Fields, through counsels Vincent L. Knight and Ronald Anderson, General Counsel and Assistant General Counsel for the Oklahoma Department of Corrections, filed an *Application to Assume Original Jurisdiction on Petition for Writ of Prohibition and Stay of District Court Order to Comply or Conduct Show Cause Hearing* in the Supreme Court of this State on April 4, 1996. Therein, Petitioner sought to prohibit Respondent from enforcing the March 19, 1996, *Order to Comply*. Petitioner asserts (1) the District Court has no personal jurisdiction over him because he was not a party to the criminal proceeding in Case Number CRF–96–5; (2) the District Court's *Order to Comply* directing Petitioner to remove a prisoner from a program which is authorized by law is an unconstitutional infringement by the judicial branch into the executive branch; and (3) the District Court's *Order to Comply* to remove a prisoner from a program authorized by law will result in chaos to the orderly management of an already overburdened prison system.

On April 4, 1996, the Supreme Court granted an immediate stay of the April 8, 1996, show cause hearing and directed the stay to remain in effect until determination of this original action or until further order of the Court. The request for stay was denied as to the hearing set on the Petitioner's Objection to Jurisdiction and Motion to Dismiss filed in the District Court. Respondent was directed to file a response. *See Fields v. Driesel,* No. 87,234 (Okl. April 4, 1996) (not for publication).

At the hearing on April 8, 1996, Respondent Judge denied Petitioner's Motion for Dismissal in the District Court, finding that venue was proper and declining to address the issues of whether the District Court had personal jurisdiction over Petitioner and whether public officials were parties to a criminal prosecution.

■ On July 5, 1996, the Supreme Court declined to assume jurisdiction and transferred the case to this Court. *See Fields v. Driesel,* No. 87,234 (Okl. July 5, 1996) (not for publication).[1]

1. Determination of jurisdictional conflict between the Supreme Court and this Court is placed squarely with the Supreme Court by the Oklahoma Constitution. Okla. Const. art. VII, § 4; *State, ex rel., Henry v. Mahler,* 786 P.2d 82, 85 (Okl.1990) "[I]ssues concerning the determination of the amount of punishment and questions regarding a prisoner's release from confinement are matters which are, without question, within the Court of Criminal Appeal's exclusive appellate jurisdiction over criminal cases. These are not administrative matters." *Id.*

Petitioner argues that a writ of prohibition should be granted for the following reasons:

1. The Order of the District Court is void as the court order to remove a prisoner from the Program violates the Separation of Powers Doctrine;

2. Corrections officials are not parties to criminal prosecutions; thus, the District Court lacks any personal jurisdiction over Director Larry Fields;

3. A contempt action cannot be used to challenge the acts of public officials for acts carried out in their official capacity;

4. Venue is proper only in Oklahoma County to contest any acts of public officials in the management and operation of prisons including the assignment of inmates to the Electronic Monitoring Program; and

5. A Writ of Prohibition is the only adequate remedy for Petitioner Fields.

For a writ of prohibition, Petitioner has the burden of establishing that "(1) a court, officer or person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy." Rule 10.6(A), 22 O.S.Supp.1996, Ch. 18, App., *Rules of the Court of Criminal Appeals.* We are satisfied that Petitioner is entitled to an extraordinary writ prohibiting Respondent from doing an act which is unauthorized by law. Respondent cannot assert jurisdiction over the Director of the Department of Corrections in a criminal proceeding to which the Director was not a named party and Respondent's effort to hold Petitioner in "indirect contempt" to challenge his official discretionary acts performed as Director of the Department of Corrections violates the Oklahoma constitutional doctrine of separation of powers.

In this case, Respondent has attempted to hold Petitioner in indirect contempt of court if Petitioner "fails" to perform certain acts. Indirect contempt of court is defined as "wil-

ful disobedience of any process or order lawfully issued or made by court; resistance wilfully offered by any person to the execution of a lawful order or process of a court." 21 O.S.1991, § 565. The lawful order involved in this matter is the Judgment and Sentence entered in the criminal case of Mr. Cherry.

Respondent asserts there is no necessity that a person be a named party to an action to be in indirect contempt of a court order and asserts that the "normal rules associated with parties would not be applicable." Therefore, Respondent claims the District Court had the authority to issue its *Order to Comply* directing Petitioner Fields to perform certain acts or to appear and show cause why he should not be held in contempt.

█ We agree with Petitioner that the District Court could not exercise personal jurisdiction over him simply by virtue of its rendering of a Judgment and Sentence against a criminal defendant. The language in the Judgment and Sentence imposed in McCurtain County District Court, Case Number CRF–96–5, does not direct the Department of Corrections to perform any act to carry out the Judgment and Sentence. The Judgment and Sentence places the defendant in the "custody and control" of the Department of Corrections in compliance with the provisions of 57 O.S.Supp.1996, § 521. Because the sentence imposed was for incarceration in the Department of Corrections, the Sheriff of the county was directed to deliver the defendant to the LARC and to leave a copy of the Judgment and Sentence "to serve as warrant and authority" for imprisonment of the defendant.

Every exercise of the power to punish a violation of a judicial order is, however, subject to one important qualification, namely, it is absolutely essential that the court making the order should have acted directly within jurisdictional limits, otherwise the disobedience of such an order will be no contempt. In the absence of jurisdiction the judgment is a nullity . . .

By transferring this case to this Court, the Supreme Court of this State has determined that this case does not involve an administrative mat-

ter, but rather involves a question regarding a prisoner's release from confinement.

*Ex parte Driggs,* 325 P.2d 72, 75–76 (Okl. 1958). Generally, a trial court's jurisdiction is based upon jurisdiction over the parties and jurisdiction of the general subject matter. *See e.g., In re Anderson,* 803 P.2d 1160, 1163 (Okl.Cr.1990); *Scobie v. Page,* 397 P.2d 520, 521 (Okl.Cr.1964).

■ Section 565 of Title 21 of the Oklahoma Statutes, which defines contempt of court, requires "the order or process disobeyed to be lawful. The lawfulness of the order is determined by whether the court had jurisdiction to so act." *Whillock v. Whillock,* 550 P.2d 558, 559 (Okl.1976). Here, the District Court's *Order to Comply* directing Petitioner to perform certain acts or to show cause why he should not be held in indirect contempt of court is not a valid order, because the District Court did not have jurisdiction over Petitioner simply by virtue of its issuance of a Judgment and Sentence in a criminal matter. As Petitioner argues, the language of a Judgment and Sentence does not make the Department of Corrections a party to the criminal proceeding. The Judgment and Sentence only requires the sheriff to deliver the defendant to LARC and leave him there for imprisonment as set out in 57 O.S.Supp.1996, § 530. Petitioner compares his case to *People v. Lockhart,* 699 P.2d 1332 (Colo.1985), where Department of Corrections officials refused to accept prisoners in accordance with mittimus orders which contained the following language:

> THEREFORE, IT IS ORDERED that the Sheriff of Jefferson County shall safely convey the Defendant to the Colorado State Department of Corrections Diagnostic Unit at Canon City, Colorado, to be received and kept as provided by law.

When the Jefferson County sheriff petitioned the District Court for twenty-three orders to show cause why the Department of Corrections should not be held in contempt, the Department of Corrections claimed the District Court had no jurisdiction to hold them in contempt because they were not officers of the court identified by state statute whose compliance could be enforced through a contempt proceeding. *Id.* at 1335.

The Colorado Supreme Court noted that "[g]enerally, state officials who are not parties to a proceeding may not be held in contempt," but determined that "corrections officials are officers of the court for the limited purpose of taking custody of prisoners as directed by the mittimus." *Id.* at 1336. The mittimus orders in question required the prisoners to "be accepted into custody," and to the extent that officials refused to accept prisoners when they had the ability to obey the order, they could be held in contempt. *Id.* at 1336–1337.

Relying upon *Lockhart,* Petitioner argues that any jurisdiction the District Court might have is limited to enforcement of the "mittimus" of the Judgment and Sentence. Petitioner maintains, however, that limited jurisdiction is not available in Oklahoma, because corrections officials are not the officers who are directed to act in the Judgment and Sentence.

Respondent argues that the Judgment and Sentence is "more than a mittimus" and Department of Corrections officials are "compelled to carry out the orders of the Court."

Title 22 O.S.1991, § 982a does allow the District Court to modify a sentence within one hundred twenty (120) days after the sentence is imposed or after probation is revoked. While this statute allows the District Court to consider modification of the sentence imposed on the defendant for one hundred twenty (120) days after sentencing, that jurisdiction does not extend to corrections officials.

When a person in this state is convicted of an offense and sentenced to imprisonment that is not to be served in a county jail, the sheriff of the county where the person was convicted is required to transport the defendant to LARC. At LARC, the sheriff must provide the Department of Corrections officials with a copy of the judgment and sentence and "the Department shall give the sheriff a receipt for each prisoner received." 57 O.S.1991, § 95; *see also* 22 O.S.1991, § 982; 57 O.S.Supp.1996, § 521.

The language of 57 O.S.1991, § 95 which requires the Department of Corrections to give the sheriff "a receipt" may be construed to require the Department of Corrections to actually receive prisoners. Unlike Colorado,

the Department of Corrections' duty to receive the prisoners stems not from the Judgment and Sentence or mittimus, but rather from state statute. Once the Department of Corrections, through its officials at LARC, receive a prisoner in custody, the Department has fulfilled its charge under the Judgment and Sentence issued by the District Court.[2]

■ In this case, Petitioner did not refuse to receive Cherry as a new inmate at LARC. The pleadings demonstrate that Cherry was received and processed as a new inmate, as required by law. Therefore, we find that any jurisdiction the District Court might have had over Petitioner by virtue of the Judgment and Sentence issued in defendant Cherry's case was limited and ended when Petitioner completed his obligation under that order by receiving Cherry into custody at LARC.

■ Secondly, we find the District Court's attempt to order Petitioner to perform a purely discretionary act is violative of the separation of powers doctrine embodied in the Oklahoma Constitution. Okla. Const. art. IV, § 1, which provides:

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

The legislative branch of government is vested with the power of enacting all laws. Okla. Const. art. V, § 1. That branch of government is intrusted with the determination of what laws shall be enacted and what laws shall not be enacted. *Threadgill v. Cross*, 26 Okl. 403, 109 P. 558, 562 (1910). We must assume that the members of the Legislature will not act in a manner which is violative of the state Constitution or in degradation of its duty to the citizens of Oklahoma. Further, once the Legislature has acted and adopted a proposed measure as law, it will be presumed a valid enactment. *Id.*

The Oklahoma Legislature, at 57 O.S.1991, § 501 et seq. (the Oklahoma Corrections Act of 1967), granted to the Department of Corrections the sole and exclusive power to operate the state prisons. The Act provides for appointment of a Director and sets forth the powers and duties of that Director. *See e.g.* 57 O.S.1991, §§ 507 and 510; 57 O.S.Supp. 1996, §§ 510, 510.9 and 510.10. The Director's duties specifically include the assignment of prisoners to and from EMP and the determination of which prisoners may be assigned to that program rests solely within the discretion of the Director of the Department of Corrections. *See* 57 O.S.Supp.1996, § 510.9.

This Court has recognized for a long time that custody and place of confinement is an administrative matter and not a judicial act. *See e.g., Ex Parte Hampton*, 87 Okl.Cr. 416, 198 P.2d 751, 754 (1948); *Ex Parte Hunt*, 93 Okl.Cr. 106, 225 P.2d 193 (1950).

Respondent claims that Petitioner's exercise of his discretionary duty to assign inmates to the EMP violates the "province of the governor" and states that "early release of a prisoner is a matter solely for the governor, upon recommendation of the Pardon and Parole Board." Respondent contends "the exercise of this unconstitutional power by the Director of the Department of Corrections justifies the District Court in asking him to justify his action through the citation for indirect contempt."

■ Article VI, Section 10 of the Oklahoma Constitution sets forth the power of the Governor of this State to grant commutations, pardons and paroles upon recommendation of the Pardon and Parole Board. Discharge of an inmate from serving a lawful sentence rests solely with the Governor. *Ex parte McClure*, 6 Okl.Cr. 241, 118 P. 591, 592 (1911); *see also Swart v. State*, 720 P.2d 1265 (Okl.Cr.1986). Respondent cites *Swart* as authority that Petitioner's power to assign

---

**2.** "It is the intent of the State Legislature that all new prisoners to be incarcerated in a state institution or facility will be processed through the Lexington Assessment and Reception Center."

57 O.S.1991, § 530. Upon receipt of an inmate at LARC, the Department of Corrections has certain duties which shall be performed as part of an inmate's assessment. 57 O.S.1991, § 530.1

inmates to the EMP violates the separation of powers doctrine. In *Swart*, we held, in part, that the Intermediate Offender Act violated the doctrine of separation of powers because it placed within the hands of the Department of Corrections the power to establish the rules and conditions of probation. We said that it was within the authority of the "court imposing a suspended sentence to set forth the terms and conditions governing such suspension" and, "the Court cannot delegate its responsibility to state the terms and conditions of suspension." *Id.* at 1271–1272; *In re Collyar*, 476 P.2d 354, 356, 357 (Okl.Cr. 1970). In short, we held that the power to state the terms of a suspended sentence rested solely within the judicial branch.

■▬▬▬ In this case, we do not have a situation where an inmate has been "discharged from a lawful sentence" or pardoned or paroled. Petitioner acted in his discretion, pursuant to authority vested in him by statute, in placing defendant Cherry in the EMP. The exercise of this discretionary power does not violate any power vested in the judicial branch. Conversely, we find that the District Court's attempt to hold Petitioner in indirect contempt for performance of a statutorily authorized discretionary act is an intrusion by the judicial branch of government on the power of the executive branch.

In *Barnett v. Moon*, 852 P.2d 161, 163 (Okl.Cr.1993), we said that placement of an inmate in the Preparole Conditional Supervision Program (PPCS) was not the equivalent of parole and noted that the inmate in PPCS remains in the custody of the Department of Corrections and only the "degree" of his confinement was affected by being placed in the PPCS. An inmate in PPCS, upon violation of the rules and conditions of probation, is subject to Department of Corrections disciplinary proceedings. *Id.* An inmate who "escapes" from PPCS is subject to criminal charges under 21 O.S.1991, § 443. 57 O.S.Supp.1996, § 365(F).

Similarly, placement of an inmate in the EMP is not the equivalent of parole or discharge from a lawful sentence. By statute, it is a program "for inmates in the custody of the Department of Corrections ..." 57 O.S.Supp.1996, § 510.9(A). Before an inmate

can be assigned to the EMP, the inmate must be processed through LARC. "The Director of the Department of Corrections shall exercise his discretion in selecting eligible inmates for assignment to the Electronic Monitoring Program ..." 57 O.S.Supp.1996, § 510.9(B).

The legislative intent that persons assigned to this program are in "custody" of the Department of Corrections is evident. *See e.g.* 57 O.S.Supp.1996, §§ 510.9(C)–(F) and 510.10. "The electronic monitoring of an inmate pursuant to this section shall be in addition to active supervision required by law and shall be considered a level of security and confinement for the inmate within the assigned program." 57 O.S.Supp.1996, § 510.10. Like inmates assigned to the Preparole Conditional Supervision Program, any inmate "who escapes from the Electronic Monitoring Program shall be subject to the provisions of Section 443 of Title 21 of the Oklahoma Statutes." 57 O.S.Supp.1996, § 510.9(E).

This Court has, more than once, recognized that the management and running of prisons is a function of the executive branch of government. *See e.g. Mayfield v. Page*, 402 P.2d 457 (Okl.Cr.1965); *Best v. Page*, 422 P.2d 210 (Okl.Cr.1966); *Galcatcher v. Page*, 437 P.2d 284 (Okl.Cr.1968); *Bell v. State*, 381 P.2d 167, 173 (Okl.Cr.1962) ("the incarceration of a convict is one of administration for an arm of the executive branch of the government.")

In addressing similar, but not identical, situations, courts in other states have arrived at the same result. In *White v. Adamek*, 907 P.2d 735 (Colo.Ct.App.1995), where a District Court entered a contempt order against the Director of the Colorado Division of Youth Services for violating the trial court's sentencing order regarding placement of a petitioner, the Colorado Court of Appeals held that the order of contempt was void on two grounds. First, the trial court's order that a defendant sentenced as an adult be placed in the Department of Institutions exceeded the trial court's jurisdiction. Second, because Colorado's sentencing provisions for adult felony offenders provided for imprisonment by confinement in "an appropriate facility as

determined by the executive director of the Department of Corrections," the doctrine of separation of powers prohibited a court from exercising its inherent powers in a manner that would preempt an executive agency from "exercising powers properly within its own sphere." *Id.* at 738. The Court of Appeals held the authority to determine the appropriate setting for adult felony offenders was vested by statute in the executive director of the Department of Corrections, rather than the judiciary. Therefore, the trial court's placement order exceeded the scope of the court's inherent powers. *Id.*

In *Kort v. Hufnagel,* 729 P.2d 370 (Colo. 1986), the Supreme Court of Colorado held a District Court did not have the authority to issue an order prohibiting transfer of a defendant in the custody of Department of Institutions to any setting other than a maximum security setting within the Colorado State Hospital. "[S]uch an order violates constitutional separation of powers and was issued without subject matter jurisdiction." *Id.* at 371.

In *State v. Beauchamp,* 262 N.J.Super. 532, 621 A.2d 516 (App.Div.1993), a defendant was convicted of burglary and contempt. As part of the sentencing order, the judge included conditions of parole. On appeal, the Superior Court of New Jersey held that the trial court had no authority to impose conditions of parole and said "once a trial court has pronounced sentence and entered a judgment of conviction, it relinquishes jurisdiction over the matter to the executive branch." *Id.* at 519.

In *Davis v. State,* 181 Ga.App. 498, 353 S.E.2d 7 (1987), a trial court imposed a sentence upon a defendant convicted of Driving Under the Influence which provided that he receive no good time credits until all fines were paid. The Court of Appeals held the trial court did not have the power to impose such a restriction, noting that the statutory provisions for good time are directly related to the duties of sentence administration, affirmatively delegated by the legislature to the custodians of the inmates. *Id.* 353 S.E.2d at 7–8; *see also Johns v. State,* 160 Ga.App. 535, 287 S.E.2d 617, 619 (1981) ("[a]ny attempt by a court to impose its will over the Executive Department as to what constitutes service of a period of confinement would be a nullity and constitute an exercise of power granted exclusively to the Executive.")

In *Care and Protection of Jeremy,* 419 Mass. 616, 646 N.E.2d 1029 (1995), a district court judge required the Department of Social Services to place a child in its temporary custody into a specific type of placement. On appeal, the Supreme Judicial Court of Massachusetts said, "[W]here the means of carrying out a statutory duty is within the discretion of the public official, courts normally will not direct how the public official should exercise that statutory duty." *Id.* at 1033 (brackets in original). The power to act in the best interests of a person properly within the jurisdiction of the court does not extend to deciding questions committed by law to the determination of a public official. *Id; see also Charrier v. Charrier,* 416 Mass. 105, 616 N.E.2d 1085 (1993).

It is clear that the Oklahoma Legislature intended to place the power to operate the prisons and to incarcerate its inmates in the hands of the Department of Corrections. The Legislature specifically placed upon the shoulders of the Department of Corrections the additional responsibility of administering alternative incarceration programs, including EMP. *See* 57 O.S.Supp.1996, § 510.4. We empathize and understand the frustration of trial judges of this State who enter Judgment and Sentences, arising from findings of guilt in accordance with the statutes of this State, and who assume due deference will be given to those sentences. This is especially true in this case where the Respondent not only considered but also included a probation component in the sentence imposed.

When the concept of accountability is thwarted by an act or acts of a public official, it dilutes the confidence of the people of this State in our system of justice. One naturally wants to take action to correct those deficiencies in lack of stewardship by an entity or individual in the execution and fulfillment of the assigned governmental role. Such action, however, must be taken in accordance with the law, the statutes, and the Constitution of this State. The issue of truth in

sentencing to ensure a person sentenced must actually serve the sentence imposed must be addressed and determined by the legislative branch. It is incumbent upon the executive and legislative branches to work together to provide the citizens of Oklahoma with a corrections system which is truthful and accountable to the public.

■ Article II, Section 1 of the Oklahoma Constitution provides that "All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare; . . ." While cost is a factor which must be considered in formulating policy which seeks to fulfill this role of government, it cannot be the only consideration. To restore their faith in the corrections system, the citizens have an inherent right to require the legislative and executive branches of government to forge a corrections policy which will provide accountability for individuals convicted of crimes, and which will ensure appropriate punishments which have certainty in service, once imposed by the courts. The judicial branch is tasked with the responsibility of interpreting the policy as enacted into our statutory structure and ensuring those statutes conform to state and federal constitutional requirements. The judiciary cannot subvert otherwise constitutional statutory provisions merely because a judge or judges disagree with the policy which has been properly formulated.

Therefore, we find that the Application for Writ of Prohibition should be granted. The District Court, while having limited jurisdiction over Petitioner to the extent that Petitioner is required to receive an inmate into custody, does not have jurisdiction to hold Petitioner in indirect contempt in this criminal proceeding. Further, the District Court's attempt, through a citation for indirect contempt, to challenge Petitioner's performance of a discretionary act is a violation by the judicial branch of government of powers vested solely in the executive branch.

THEREFORE IT IS THE ORDER OF THIS COURT that the stay of proceedings is hereby LIFTED and the Petitioner's Application for Writ of Prohibition is hereby GRANTED. Respondent is hereby prohibited from further proceeding against Petitioner in McCurtain County District Court, Case Number CRF–96–5.

IT IS SO ORDERED.

Gary L. Lumpkin
GARY L. LUMPKIN, Judge

James F. Lane
JAMES F. LANE, Judge

Charles A. Johnson
CHARLES A. JOHNSON, Judge

CHAPEL, P.J., and STRUBHAR, V.P.J., dissent.

CHAPEL, Presiding Judge, dissenting:

Wilford L. "Pete" Cherry sold cocaine out of his home and as a result pled guilty to delivery of drugs on February 5, 1996, in the District Court of McCurtain County, Oklahoma. District Judge Willard L. Driesel sentenced Cherry to twelve years with five years suspended. Cherry was transferred to the custody of the Oklahoma Department of Corrections [D.O.C.] on February 9, 1996. Thirty-two days later, the D.O.C. released Cherry from custody and sent him home pursuant to 57 O.S. § 510.9, a statute providing for electronic monitoring of inmates. Cherry was also placed under the supervision of a D.O.C. probation and parole officer.

Judge Driesel, upon hearing of Cherry's release from prison by the DOC, issued an order requiring the Director of the D.O.C. to immediately take Cherry into D.O.C. custody and imprison him or appear and show cause why he should not be held in contempt. The Director of D.O.C. filed this action requesting this Court to prohibit Judge Driesel from enforcing his order. The case before us presents many procedural problems: who is the proper party, was he served, does venue lie in McCurtain County. These and several other interesting, complex procedural problems plague this case. The importance of this matter, however, convinces me that we should overlook the formal procedural problems and decide the substantive issue of this case on the merits.

The substantive issue in this case may be stated as follows: Which branch of govern-

ment in the State of Oklahoma has the constitutional authority to determine the length of time a person shall be incarcerated [1] upon conviction of a crime? [2]

The Oklahoma Constitution divides the powers of government into three separate departments or branches, the Legislative, Executive, and Judicial, and further provides that no branch shall exercise powers belonging to another.[3] This separation of powers, with its inherent system of checks and balances, was drawn from a similar division of powers in the United States Constitution.

Entering a judgment of conviction and sentence in a criminal case is a quintessential judicial power. And, if a court has the authority to enter a valid judgment it must have the authority to enforce that judgment. If the judiciary does not have the power to enforce its judgments then it can hardly be said to be a co-equal branch of government. Indeed, if it cannot enforce its judgments, the judiciary becomes a hollow branch.

Clearly, the Legislative branch has exclusive authority to pass laws determining what shall constitute crimes in Oklahoma and establishing penalties for such crimes. The Judicial branch has exclusive authority to try individuals charged with crimes and enter judgment and sentences upon trial of such charges. The Executive branch has exclusive power to carry out the judgment and sentence of the court in a criminal case or, alternatively, the constitutional authority to grant reprieves, commutations, paroles and pardons as specifically provided by the Oklahoma Constitution.[4]

Imposing judgment and sentence in a criminal case is the business of the courts. Neither the Legislature nor the Executive branch has the authority to change a judicially imposed sentence, except by reprieve, commutation, parole or pardon as specifically provided by our Constitution. The Executive branch has clear constitutional authority to grant pardons and paroles pursuant to Article VI, Section 10 of the Oklahoma Constitution, but cannot go beyond that authority. The Legislature may of course change the length or type of punishment to be imposed for any crime, but may not alter the length of a sentence after sentence is imposed in a specific case. As the Legislature has no authority to alter the length of Cherry's validly imposed sentence, it cannot delegate that authority to the Executive branch. Thus the D.O.C. had no lawful authority to order Cherry's release.

The Respondent trial court sentenced Cherry to twelve years with five years suspended. The D.O.C. released Cherry from prison after only 32 days of custody and assigned him to the Electronic Monitoring

---

1. Several fictions have been developed to avoid facing this issue. Thus, it is argued that an inmate released by D.O.C. on electronic monitoring or on "pre-parole" is in "constructive custody." The plain fact is, however, that if an inmate is not in prison, he is not in custody. I do not dispute the fact that an inmate who is subject to electronic monitoring, or who is subject to supervision by a probation officer, has significant restrictions upon his liberty. Notwithstanding such restrictions, however, such an inmate is not in custody.

2. Confusion surrounding this issue has led to serious problems in Oklahoma. At present, no one knows what any sentence means. The case before us is a perfect example. A judge sentenced Cherry to twelve years with five years suspended. A visitor from Mars who understands English would undoubtedly, conclude that Cherry would be in prison for seven years. Instead, he was released after 32 days and directed to go back to the very home from which he had been convicted of selling drugs.

   Neither the Judge, prosecutor, defendant, defense lawyer, jury, victim, legislature or Chief Executive of the State have any idea how long a person convicted and sentenced to a specific term of years will serve in Oklahoma. The only thing certain about a sentence in Oklahoma is its uncertainty. And, we cannot permit this to continue. The negative effects of such uncertainty on the criminal justice system are immeasurable. The public has very little confidence in the system as can be seen by jurors who routinely impose sentences measured in thousands of years. They know that a year does not mean a year. Jurors also continually send notes to the trial judges during deliberations asking if a sentence of life without parole really means what it says. We refuse to even allow trial judges to answer such questions. Thus, there is no doubt in my mind we have people on death row because jurors have no confidence that a life without parole sentence means life without parole.

3. Okla. Const. art. IV, § 1.

4. Okla. Const. art. VI, § 10.

Program pursuant to a law which allows the D.O.C. to release inmates from incarceration if certain conditions are met, despite the terms of the sentence imposed by the trial court. The majority's discussion focuses on cases in which courts have attempted to impose on the Executive branch specific conditions for confining prisoners. That is not the situation here. The trial court merely imposed a sentence of a term of years, to be served through the D.O.C. This is well within the trial court's powers—in fact, the trial court is the only entity which could sentence Cherry. The only "condition" of Cherry's sentence was that he be confined in D.O.C. custody. The trial court attempted to ensure that this sentence was carried out. This action does not encroach on any power vested in the Executive branch. Judge Driesel neither imposed specific requirements on the manner in which Cherry's sentence was to be served, nor attempted to prevent the D.O.C. from carrying out a reprieve, commutation, parole or pardon. A trial court surely has the power to enforce a validly imposed court order.

Clearly, the early release laws enacted by the legislature were good faith responses to the overcrowding problems in our state prisons. Similarly, the attempts to implement these laws by the D.O.C. and the Governor have been in good faith. There is absolutely no evidence that either of the other branches of government is attempting to seize or tread upon the powers and functions of the judiciary. However, notwithstanding the good faith of the Legislature and the Executive branches, the net result of laws establishing pre-parole, electronic monitoring, and other such programs is to effectively negate sentences recommended by juries and imposed by court order. Such statutes also violate the Executive's exclusive constitutional powers to grant reprieves, commutations, paroles and pardons. Any such law is, in my judgment, unconstitutional and a violation of the separation of powers as provided by Article IV, Section 1 of the Oklahoma Constitution. I would therefore, accept jurisdiction of this matter, declare 57 O.S.Supp.1996, § 510.9,

invalid and remand this matter to the District Court for further proceedings.

STRUBHAR, Vice Presiding Judge, dissenting:

Because the majority seeks to upset the balance of power between the three branches of government and relinquish the judiciary's authority to sentence convicted individuals to imprisonment, I must dissent. After Wilford L. "Pete" Cherry entered a plea of guilty for selling cocaine out of his home, the District Court sentenced Cherry to twelve years imprisonment with five years suspended. Thirty-two days after Cherry arrived at the Lexington Assessment and Reception Center to serve his sentence, he was returned to his home under the Department of Corrections' Electronic Monitoring Program.

When Judge Dreisel learned of Cherry's release from prison, he ordered the Director of Corrections to furnish proof that Cherry was not currently assigned to the Electronic Monitoring Program or to immediately comply with the judgment and sentence of the court by returning Cherry to a prison facility or to show cause why the Director should not be held in indirect contempt of court for failing to comply with the sentencing order.

The majority concludes that the District Court lacked jurisdiction over the Director of the Department of Corrections because he was not a named party in the criminal proceeding. Is it to be contended that, where the law in precise terms directs District Courts to sentence convicted individuals to imprisonment, the law is incapable of securing obedience to its mandate?[1] Further, is it to be contended that the heads or directors of departments are not amenable to the law of this State? Because the indirect contempt statute is not limited to named parties to an order but rather applies to "any person," I would find that the District Court had jurisdiction. 21 O.S.1991, § 565.

The majority also concludes that the District Court's efforts to hold the Director of the Department of Corrections in indirect contempt in order to challenge his official

1. It cannot be disputed that the District Court had the power to enter a valid order sentencing

Cherry to imprisonment. 63 O.S.1991, § 2–401(B)(2).

acts violates the Oklahoma constitutional doctrine of separation of powers. It is my belief that it is the duty of the judicial department to say what the law is. Those who apply the rule of law to particular cases must, of necessity, expound and interpret the rule. When a particular district court enters an order sentencing a convicted individual to imprisonment pursuant to a penal statute, the court has entered a valid enforceable order requiring confinement in a prison facility. Neither the Legislature nor the Executive branch has the authority to modify a judicially imposed sentence unless the court's order confers that authority by committing the convicted individual to imprisonment subject to alternative confinement programs instituted by the Department.

JOHNSON, Judge, special concurring:

This is truly a case of frustration. During oral argument you could tell that everyone in the courtroom was frustrated. When you read this Order and the two dissents, it is easy to see that all the members of this Court are frustrated. The problem has to do with overcrowding in our prison system and, quite frankly, the Legislature not appropriating sufficient funds to provide for the incarceration that the judicial system and the juries of this State are giving to criminal defendants.

I specially concur herein but go on record as agreeing with both the dissents of Judge Chapel and Judge Strubhar in many respects. There is pending legislation that may at least for the foreseeable future solve this particular problem. The Legislature and the Executive branches should have additional time to see if they cannot cure the frustration of all the parties, especially the jurors of this State. Judge Chapel is correct when he notes that the judicial branch has the exclusive power to try individuals and to enter judgments and sentences after appropriate trial. The Supreme Court of the State of Oklahoma has agreed that this Court has jurisdiction over these matters. Therefore, in the event the Legislature and the Executive do not solve this problem, the Court may have to step in and solve the problem for those branches. This Judge does not relish

the idea of running the court system as the Tenth Circuit has recently done. *Harris v. Champion,* 938 F.2d 1062 (10th Cir.1991), *on remand,* 15 F.3d 1538 (10th Cir.1994); *Hill v. Reynolds,* 942 F.2d 1494 (10th Cir.1991). It may well be that this is the only alternative that this Court will have but for now, I will specially concur in the Order.