262 N.J. Super. 532 (1993)
621 A.2d 516
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANGEL BEAUCHAMP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1993.
Decided February 19, 1993.
*533 Before Judges PRESSLER, R.S. COHEN, and KESTIN.
Marcia Blum, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, attorney for appellant; Ms. Blum of counsel and on the brief).
Steven E. Braun, Senior Assistant Prosecutor, argued the cause for respondent (Ronald S. Fava, Passaic County Prosecutor, *534 attorney for respondent; Mr. Braun of counsel and on the letter brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Pursuant to a plea agreement, defendant pleaded guilty to burglary and contempt; a second contempt charge was dismissed. The agreement was predicated upon a five-year maximum sentence on the burglary and a concurrent sentence on the contempt. At the plea hearing defendant admitted to a January 1990 burglary at the home of his estranged wife and a May 1990 violation of a temporary restraint issued pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-1 et seq., under which defendant had been ordered to stay away from his wife. The plea agreement also provided that defendant was to have no contact with his wife or any of her relatives and, further, that, before his release from custody, defendant would submit to a psychiatric evaluation and would be subject to the issuance of a permanent restraining order.
Three sentencing proceedings were held on July 12, July 25, and September 13, 1991; and a different form of judgment of conviction was entered as a result of each. In each form, the basic sentence imposed was a five-year term of imprisonment for the third degree burglary conviction and a concurrent 18-month term for the fourth degree contempt. A VCCB penalty of $60 was also ordered.
The differences in the three forms of judgment bear upon the terms and conditions of the sentence. In the July 12 judgment of conviction the following provisions appeared as part of the disposition of the burglary offense:
Conditions for release from custody: Defendant to have no victim contact and no contact with victim's mother. "Victim"; Carmen Beauchamp, victim's mother; Carmen Perez. Defendant not to come within five miles radius of the victim's house. [sic]
As a term of the contempt conviction, the sentencing judge also provided that there was to be no child visitation until a court *535 hearing; that the Parole Board was required to advise the court, prosecutor and victim before defendant was reviewed for parole and before actual parole; and that the Department of Corrections was to receive a full transcript of the sentencing proceedings. The judgment further stated the following under the heading "Aggravating Factors":
Violated Restraining Order same day as ordered by Court. Nature and circumstances of the offense. Risk that defendant will commit another offense. Need for deterring defendant and others. Has violated 3 Restraining Orders.
No mitigating factors were found.
A further condition for release from custody in respect of the sentence for burglary was added in the July 25 "Amended Judgment":
Defendant is not to enter the township of Fairfield, nor contact victim at her place of employment [in] Fairfield, N.J.
The same conditions, limitations and instructions were reiterated in reorganized fashion in the September 13, "Second Amended Judgment as to Conditions of Parole and Aggravating and Mitigating Factors." The statement of aggravating factors was expanded:
This defendant has violated Restraining Order several times. On the date of this offense he had been ordered to stay away from his wife by the Superior Court.... Despite this order he broke into his wife [sic] house. He has continued to threaten to kill his wife while incarcerated. He has repeated these threats to family members up to the sentencing procedure. There is a serious and real risk that this defendant will kill his wife on his release from custody. He has violated several Restraining Orders. He has stalked his wife in an effort to do her serious bodily harm. The Court is very concerned that this defendant will carry out his threat upon release. Every precaution must be taken to protect the victim. On September 13, 1991 the defendant was served personally with a Restraining Order. [emphasis contained in original]
Defendant raises the following issues on his appeal of the sentence:
POINT I
AS THE COURT HAD NO AUTHORITY TO IMPOSE CONDITIONS OF PAROLE, THAT PART OF ITS SENTENCE CONTAINING CONDITIONS OF PAROLE IS ILLEGAL AND MUST BE VACATED. (Not Raised Below.)
POINT II
THE COURT HAD NO JURISDICTION TO AMEND DEFENDANT'S SENTENCE AFTER IT WAS PRONOUNCED AND JUDGMENT WAS ENTERED *536 ON JULY 12, AND THE AMENDMENTS EFFECTED AT THE SUBSEQUENT HEARINGS OF JULY 25 AND SEPTEMBER 13 VIOLATE DEFENDANT'S CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY AND MUST BE VACATED. (Not Raised Below.)
POINT III
THE COURTS SPECIAL CONDITIONS OF PAROLE ARE EXCESSIVE AND DISPROPORTIONATE TO THE OFFENSE AND VIOLATE THE CONSTITUTIONAL GUARANTEES OF DUE PROCESS AND EQUAL PROTECTION AND THE RIGHT TO TRAVEL AS WELL AS THE CONSTITUTIONAL PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT. (Not Raised Below.)
We agree that the trial court had no authority to impose conditions of parole and for that reason we reverse. Having reached this conclusion, we find it unnecessary to address the remaining issues raised by defendant.
We can understand the considerations that motivated the sentencing judge, in the circumstances he faced, to establish the conditions of parole. We share his concerns for the safety of the victim and her family in the light of defendant's past conduct. We are, nevertheless, constrained to conclude that, under clear, prevailing rules of law, a sentencing judge is without the power to establish conditions of parole, even those that are case- or party-related and may be warranted by the nature of the circumstances or the quality of the relationships.
Although the issue is one more of power than propriety, it has qualities of both. As to the latter, we are concerned with the wisdom of judicially established conditions for parole which are crafted on sentencing day to govern a defendant some time in the future when he becomes eligible for parole. Such conditions by definition and, in this case, by their specific terms, if authorized, would unremittingly govern defendant's future freedom because of valid concerns at sentencing, without allowing for changes in circumstance or attitude. A court may not deal with issues of liberty in so direct a fashion based upon speculation regarding future conditions. Cf. State v. Krol, 68 N.J. 236, 248, 344 A.2d 289 (1975).
*537 Our reservations about a sentencing court's prescience to divine future needs do not in any way bear upon its authority or discretion to articulate, as completely as necessary, by way of providing full background for the Parole Board, all the factual concerns, judgments and insights it has developed as a result of its exposure to the issues and the people involved in the criminal case. See N.J.A.C. 10A:71-3.11(b)20. These statements must, however, be limited in their character to a report of background or as recommended factors for the Parole Board's consideration, not as established conditions of parole. With such a limited impact, the constitutionally based concerns expressed by defendant with regard to successive sentencing proceedings and amended judgments of conviction are de minimis.
Under our constitutional and statutory scheme, once a trial court has pronounced sentence and entered a judgment of conviction, it relinquishes jurisdiction over the matter to the executive branch, except for the appellate process and to the extent that regular procedures permit the matter to be reopened in a judicial forum for limited purposes which can be achieved only in a court. See, e.g., R. 3:21-10; 3:22.
Just as the executive branch of government may not intrude unduly on the judiciary's discharge of its responsibilities in the sentencing process, State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992), so is the judicial branch limited in its role thereafter as the sentence is executed. Creation of the substantive standards governing both branches is the province of the third, the legislative, State v. Des Marets, 92 N.J. 62, 80-81, 455 A.2d 1074 (1983); and the respective prerogatives of the judiciary and the executive are each immune from undue intrusion by the other branch. N.J. Const. art. III, ¶ 1.
The symmetry of the constitutional scheme permits the judicial and executive branches to participate in the other's province by way of recommendation but not by way of directing the outcome. The governance of the "system for the granting of *538 parole" is committed to the executive, N.J. Const. art. V, § 2, ¶ 2, with at least as much certainty, clarity, and fullness as the power to pass sentence in a criminal prosecution is committed to the judicial branch, N.J. Const. art. VI. § 1, ¶ 1; § 3, ¶ 2. State v. Cannon, 128 N.J. 546, 560-563, 608 A.2d 341 (1992); State v. Lavelle, 54 N.J. 315, 320-21, 255 A.2d 223 (1969). The Legislature has established, in detail, the substantive standards and procedural framework governing the parole process, see N.J.S.A. 30:4-107 through 123.69, as well as those governing the sentencing process, in a manner that articulates each branch's scope of authority with substantial clarity, minimizing the occasions upon which the locus of authority may seriously be in question. See generally N.J. Parole Board v. Byrne, 93 N.J. 192, 460 A.2d 103 (1983).
The "conditions" articulated by the sentencing judge in this matter were a nullity insofar as they were designed to govern and control the decisions whether, when, and under what conditions parole would be granted to defendant. The underlying content, expressing emphatic recommendations to be considered at the appropriate times, as well as requests for notification concerning the various stages of the parole process, nevertheless have meaning and viability as background for the Parole Board. The provisions of the judgment of conviction relating to parole must, accordingly, be modified to reflect their correct character as recommendations and not as mandates.
In so ruling, we distinguish between those provisions of the judgment of conviction which were designated as conditions of parole and those which were intended to regulate defendant's conduct as would any order issued pursuant to the Prevention of Domestic Violence Act. The latter, such as the provision for "[n]o child visitation until a court hearing", were within the plenary authority of the court at the time the judgment of conviction was entered, N.J.S.A. 2C:25-13b(5), and remain so today, N.J.S.A. 2C:25-29b(3) (West Supp. 1992). In the trial or conviction of a defendant for criminal contempt of *539 court pursuant to N.J.S.A. 2C:29-9b (amended 1991) (violation of a domestic violence order as a fourth degree offense), the Superior Court retains the same plenary power to enter appropriate remedial orders against the defendant as are authorized by the Prevention of Domestic Violence Act and are customarily entered in the Family Part. N.J.S.A. 2C:25-11 (before 1991 amendments); N.J.S.A. 2C:25-27 (West Supp. 1992) (since 1991 amendments). Furthermore, the validity of existing domestic violence orders is unaffected by the fact of defendant's conviction and imprisonment. As long as they remain effective by their own terms and as a matter of law, those orders will continue to be enforceable against defendant upon his release.
Remanded for modification of the judgment of conviction to conform with the requirements of this decision.