**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3498-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT J. HARTOBEY,

     Defendant-Appellant.

_____

Argued October 1, 2024 – Decided October 25, 2024

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 21-04-0268.

Rachel E. Leslie, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel E. Leslie, of counsel and on the briefs).

Alyssa N. Biamonte, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Alyssa N. Biamonte, of ounsel and on the brief).

PER CURIAM

Following a jury trial, defendant Robert Hartobey was convicted of animal cruelty stemming from him kicking and punching his dog, Nessa. The State's proofs at trial included eyewitness testimony from a good Samaritan, two responding police officers, an animal control officer, and a veterinarian, all of whom saw the dog either during the attack or the day after. Defendant, who was already serving a sentence of parole supervision for life (PSL), N.J.S.A. 2C:43-6.4, for an unrelated conviction, received a county jail sentence with additional conditions imposed on his PSL sentence.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> DEFENDANT'S ANIMAL CRUELTY CONVICTION MUST BE REVERSED BECAUSE THE JURY INSTRUCTIONS FAILED TO DEFINE THE CENTRAL ELEMENT OF THE OFFENSE. (NOT RAISED BELOW).
>
> POINT II
>
> THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL BECAUSE THE STATE FAILED TO PRESENT EVIDENCE THAT DEFENDANT ACTED UNNECESSARILY OR CRUELY.

A-3498-22

POINT III

THE NON-CUSTODIAL PORTION OF DEFENDANT'S SENTENCE IS ILLEGAL AND MUST BE VACATED BECAUSE THE COURT HAD NO AUTHORITY TO IMPOSE CONDITIONS ON DEFENDANT'S PAROLE SUPERVISION FOR LIFE, AND BECAUSE ALL SENTENCES MUST BE AUTHORIZED BY LAW.

    1. Sentencing Courts Lack Jurisdiction To Impose Conditions Of Parole.

    2. Sentencing Courts May Only Impose Sentences Authorized By Statute.

Based on our review of the record and the applicable legal principles, we affirm the conviction but vacate the noncustodial portion of defendant's sentence.

I.

On April 14, 2021, defendant was charged in a Somerset County indictment with fourth degree cruelty to animals, N.J.S.A. 4:22-17(c)(1). We glean these facts from the three-day jury trial conducted from May 8 to 10, 2023.

At approximately 10:00 p.m. on May 8, 2020, Heather Dougherty was "sitting down in [her] living room" with her dog when she heard "a loud thud against [her] house," followed "about ten seconds later" by "another loud thud." Dougherty went outside onto her porch and observed a man "kicking" what she believed was "a book bag" until she "heard . . . whimpering and realized it was

3

a dog." Dougherty did not see the man "slam [the] dog against" the foundation of her house but testified that she "felt it from [her] living room" and that her dog reacted to it. After yelling at the man "to get the hell off that dog," to which the man responded that she should "get [her] . . . fat ass back in the house," Dougherty went back inside and called 9-1-1. According to Dougherty, as she reported the incident to the 9-1-1 dispatcher, she observed defendant "kicking" and "dragging" the dog. She testified the dog "wasn't walking" and "was whimpering."

Manville Police Officers Michael Zangrillo and David Somonski responded and observed a man, later identified as defendant, fitting the description reported in the dispatch. When they arrived on the scene, the officers saw defendant "striking" the dog "with a closed fist" on "[t]he top of [her] head," using "a downward motion." Defendant had "the dog leashed around the neck" and was "pulling the leash . . . to force the dog to raise [her] head," which Officer Zangrillo believed was "to make it easier to strike the dog." The officers witnessed defendant strike the dog twice and then "made contact with [defendant] as he was attempting his third [strike]."

The officers described defendant as "intoxicated" with "[s]lurred speech, bloodshot watery eyes, unsteady[,] staggering walk" and emitting "the odor of

4

an alcoholic beverage . . . on his breath and . . . person." The dog, later identified as Nessa, "appeared frightened of . . . defendant" and "scared." She had her "tail between her legs,"[1] her ears tucked "behind [her] head," and she was "whimpering," "shaking," and "cowering towards the ground." She had an "open wound" and "fresh blood" on "the very top of [her] head" about "an inch . . . from her eye." The officers arrested defendant and brought Nessa "[b]ack to the police station." While at the police station, Nessa was still "[f]rightened," "shaking," and "scared." She ran "underneath a trailer" in the station's "sally port" and "just laid down."

The police contacted the Somerset Regional Animal Shelter to pick up Nessa, and animal control officer Christopher Moroney responded to the call. When Moroney arrived at the police station, Nessa was in the "bay area" where the police cars were located and "hunkered down under [a] car, . . . trying to make herself as small as could be." According to Moroney, Nessa appeared "very nervous" and "very frightened." Moroney used dog treats to "coax [Nessa] out," "lifted her in[to the shelter's] truck," and "transported her to the shelter." When Moroney picked Nessa up, "she yelped" as if she was in pain.

---

[1] There was conflicting testimony as to whether Nessa had a tail. On cross-examination, Officer Somonski testified that "[t]he tail looked like it was between [the dog's] legs."

A-3498-22

The next day, Moroney took Nessa to Whitehouse Veterinary Hospital where Dr. Brett Newton examined her. Newton "approximated Nessa's age to be around six months old" and testified that she weighed "[a]bout [fifty] pounds." Nessa underwent a "full physical examination," including "radiographs," "a cursory ultrasound," and "blood tests." The radiographs were "normal" and did not show "bruising to the lungs or broken ribs." Both the cursory ultrasound and blood work also came back "normal." Newton observed "some abnormalities in the physical examination," notably "ear mites" as well as "scabbing and hair loss in a couple [of] different places." Newton believed that "demodectic mange" was "one of the possible causes for the hair loss on Nessa's body."

Defendant produced two witnesses, his mother, Catherine McCarthney, whom Nessa lived with after leaving the shelter, and Dr. Beth Sulner, who was qualified "as an expert in veterinary medicine" and who treated Nessa over three months after the incident. McCarthney described Nessa as a "shy" "couch potato" who "sleeps all the time." She agreed that Nessa was not "violent," "vicious," or "aggressive," and was a "very lovable" dog.

Sulner testified that Nessa was brought to her veterinary practice on August 13, 2020, and treated by her associate, Dr. Jennifer Feeney. According

6 A-3498-22

to hospital notes reviewed by Sulner, Nessa "came in for a patch of hair loss on the top of her head." Feeney's examination, which included a skin scrape, revealed that Nessa had "demodex," "a type of mite that lives under the skin." As a result, Nessa was diagnosed with "mange."

After the jury returned a guilty verdict, the judge sentenced defendant to 180 days in the county jail and imposed various conditions on his PSL sentence. The judge memorialized the sentence in a conforming judgment of conviction entered on June 27, 2023, and this appeal followed.

II.

In Point I, defendant argues he "was denied a fair trial because the critical element of the animal cruelty charge was never defined for the jury." Specifically, defendant argues that although the State proceeded "under the theory that [defendant] 'unnecessarily or cruelly beat' or 'cruelly abuse[d]' the dog," the jury instructions failed to define "'unnecessarily' and 'cruelly.'" Defendant further asserts that although the judge "followed the language of the model charge for animal cruelty," the charge "adds nothing to the statutory terms of the offense" and fails to "define the acts that constitute" "cruel" or "unnecessary." Defendant posits that although our courts have not "explored the meaning of these terms in this context, . . . child cruelty cases provide a

useful analog." At trial, defendant did not ask the judge to tailor the model jury charge nor did defendant object to the charge that was delivered.

The governing legal principles that guide our analysis are well settled. "Appropriate and proper charges to a jury are essential for a fair trial." State v. Lora, 465 N.J. Super. 477, 501 (App. Div. 2020) (quoting State v. Green, 86 N.J. 281, 287 (1981)). "Jury charges must provide a 'comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Singleton, 211 N.J. 157, 181-82 (2012) (quoting Green, 86 N.J. at 287-88).

If a defendant does not object when a charge is given, as here, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting Singleton, 211 N.J. at 182). When there is no objection, we review for plain error and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2); see State v. Adams, 194 N.J. 186, 206-07 (2008) ("Generally, a defendant waives the right to contest an instruction on appeal if he does not object to the instructions as required by Rule 1:7-2.").

A-3498-22

Plain error in a jury charge is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant [and] sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (first alteration in original) (quoting Adams, 194 N.J. at 207). "Nevertheless, because clear and correct jury instructions are fundamental to a fair trial, erroneous instructions in a criminal case are 'poor candidates for rehabilitation under the plain error theory.'" Adams, 194 N.J. at 207 (quoting State v. Jordan, 147 N.J. 409, 422-23 (1997)).

To determine whether there was error in a jury charge, "[t]he charge must be read as a whole." State v. Torres, 183 N.J. 554, 564 (2005) (citing Jordan, 147 N.J. at 422). We "must not look at portions of the charge alleged to be erroneous in isolation; rather, 'the charge should be examined as a whole to determine its overall effect,' and 'whether the challenged language was misleading or ambiguous.'" State v. McKinney, 223 N.J. 475, 494 (2015) (first quoting Jordan, 147 N.J. at 422; and then quoting State v. Nelson, 173 N.J. 417, 447 (2002)). In addition, the error "must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

9

Here, defendant was charged with animal cruelty under N.J.S.A. 4:22-17(c)(1), which provides "[i]t shall be unlawful to purposely, knowingly, or recklessly . . . [t]orment, torture, maim, hang, poison, unnecessarily or cruelly beat, cruelly abuse, or needlessly mutilate a living animal or creature . . . ."  In the final charge, the judge instructed the jury:

> [I]n order to find the defendant guilty of this offense . . . , the State must prove each of the following elements beyond a reasonable doubt.  There are three elements.  Number one, that the defendant acted purposely, knowingly, or recklessly; number two, that the defendant committed one or more of the following acts, tormented, tortured, maimed, hung, poisoned, unnecessarily or cruelly beat, cruelly abused or needlessly mutilated; and, number three, that the defendant committed this conduct against a living animal or creature.

In explaining the second element to the jury, the judge stated:

> [T]he second element that the State must prove beyond a reasonable doubt is that the defendant committed one or more of the following acts, tormented the animal, tortured the animal, maimed the animal, hung the animal, poisoned the animal, unnecessarily or cruelly beat the animal, cruelly abused the animal or needlessly mutilated the animal.  Specifically, the State alleges here that [defendant] unnecessarily or cruelly beat or cruelly abused Nessa, the six-month-old puppy.

In instructing the jury, the judge read the model jury charge in its entirety almost verbatim.  See Model Jury Charges (Criminal), "Animal Cruelty –

10

Torment/Torture (N.J.S.A. 4:22-17(c)(1))" (approved June 7, 2021). Although model jury charges "are not binding authority," State v. Bryant, 419 N.J. Super. 15, 28 (App. Div. 2011), "a jury charge is presumed to be proper when it tracks the model jury charge because the process to adopt model jury charges is 'comprehensive and thorough.'" State v. Cotto, 471 N.J. Super. 489, 543 (App. Div. 2022) (quoting State v. R.B., 183 N.J. 308, 325 (2005)); see Mogull v. C.B. Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000) (noting that "[i]t is difficult to find that a charge that follows the Model Charge so closely constitutes plain error"); see also R.B., 183 N.J. at 325 (instructing trial courts to follow the model jury charges and read them "in their entirety to the jury").

Defendant invites us to look to "child cruelty cases" as "a useful analog" because, he asserts, the model jury charge for child abuse defines the term "cruelty." We decline the invitation. The model jury charge for child abuse does not define the term "cruelty" generally; instead, it provides "that the State must prove beyond a reasonable doubt . . . that defendant knowingly committed an act of cruelty against" a child and then provides five possible "act[s] of cruelty," one or more of which the defendant must have committed to be found guilty of the charge. See Model Jury Charges (Criminal), "Abuse/Cruelty to Child (Non-Parent/Guardian/Person Having Control) (N.J.S.A. 9:6-1; N.J.S.A.

9:6-3)" (approved April 16, 2012). Similarly, the model jury charge for animal cruelty provides that "the State must prove beyond a reasonable doubt . . . that the defendant committed one or more of the following acts" and then defines those acts as "tormented the animal; tortured the animal; maimed the animal; hung the animal; poisoned the animal; unnecessarily or cruelly beat the animal; cruelly abused the animal; or needlessly mutilated the animal." Model Jury Charges (Criminal), "Animal Cruelty – Torment/Torture (N.J.S.A. 4:22-17(c)(1))" (approved June 7, 2021).

We have previously acknowledged that "[a] court's obligation properly to instruct and to guide a jury includes the duty to clarify statutory language that prescribes the elements of a crime when clarification is essential to ensure that the jury will fully understand and actually find those elements in determining the defendant's guilt." State v. N.I., 349 N.J. Super. 299, 308 (App. Div. 2002) (quoting State v. Alexander, 136 N.J. 563, 571 (1994)). However, "[t]his is not to say that every word used in a charge must be further defined even when it has a readily and commonly understood meaning." Id. at 308 (citing State v. Rovito, 99 N.J. 581, 584-85 (1985)). Indeed, "[c]ertain words can be understood by 'a person of average intelligence' and 'would not send the average citizen scrambling for a dictionary.'" Id. at 308-09 (quoting State v. Afanador, 134 N.J.

12

162, 171 (1993)). As such, "[w]ords 'used by ordinary citizens in everyday conversation' need not be defined." Id. at 309 (quoting Afanador, 134 N.J. at 175). Here, we are satisfied that "cruelly" and "unnecessarily" required no further definition or clarification for the jury.

In Point II, defendant argues that because "the State did not present sufficient evidence that [defendant] acted unnecessarily or cruelly," the trial court erroneously denied his motion for a judgment of acquittal and "the [animal cruelty] offense should not have been submitted for the jury's consideration."

"Motions for a judgment of acquittal are governed by Rule 3:18-1," State v. Tindell, 417 N.J. Super. 530, 548 (App. Div. 2011), which provides in part, "[a]t the close of the State's case . . . , the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to warrant a conviction."

But

> a trial court must deny the defendant's motion if "viewing the State's evidence in its entirety . . . and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt . . . beyond a reasonable doubt." State v. Wilder, 193 N.J. 398, 406 (2008) (quoting State v. Reyes, 50 N.J. 454, 458-59 (1967)).

13

[State v. Ellis, 424 N.J. Super. 267, 273 (App. Div. 2012) (omissions in original).]

"On appeal, we utilize the same standard as the trial court in determining whether a judgment of acquittal was warranted," ibid., but we apply "a de novo standard of review," State v. Williams, 218 N.J. 576, 593-94 (2014), and "owe no deference to the findings of . . . the trial court," State v. Lodzinski, 249 N.J. 116, 145 (2021).

At the close of the State's case, defendant moved for a judgment of acquittal, arguing the evidence was insufficient to warrant a conviction for animal cruelty. Relying on the testimony of Dougherty and the two responding police officers, all of whom actually observed defendant repeatedly strike Nessa, the judge denied the motion. We agree that viewing the State's evidence in its entirety in the light most favorable to the State, a reasonable jury could have found defendant guilty of animal cruelty. Three witnesses testified that they saw defendant physically assault Nessa. Dougherty saw defendant kick Nessa and the responding officers both saw defendant punch Nessa twice and attempt a third strike before they interceded. Further, Zangrillo and Somonski observed an "open wound" and "fresh blood" on "the very top of [Nessa's] head." Additionally, both officers as well as Moroney described Nessa as scared and frightened. Moroney also testified that Nessa "yelped" as if she was in pain

14

when he picked her up to load her into the truck.

Defendant asserts "the State was required to prove that [he] inflicted unnecessary pain or suffering, or prolonged torment, upon the animal" and "[t]he State failed to carry that burden" because "the dog had no signs of bruising, no signs of trauma, and no fractures" the day after defendant's arrest, and none of the State's witnesses "testified about events preceding the alleged punching or kicking." However, contrary to defendant's assertions, the State was only required to present evidence that defendant unnecessarily or cruelly beat Nessa, which it did. Indeed, a violation of the statute will be upgraded from fourth degree to third degree if "the animal or creature suffers serious bodily injury as a result of the violation." N.J.S.A. 4:22-17(d)(1)(b).

In Point III, defendant argues that because the judge had "no authority" to impose conditions on his existing PSL sentence, the non-custodial portion of his sentence was not "authorized by law" and "must be vacated." The challenged conditions of parole are that defendant shall: (1) have no contact with Nessa; (2) never own or care for any other animals; and (3) attend anger management counseling. Defendant does not contest the 180-day county jail sentence or financial penalties imposed.

The legality of a sentence is reviewed "de novo, 'affording no special

15

deference to the court['s] interpretation of the relevant statutes.'" State v. Steingraber, 465 N.J. Super. 322, 327-28 (App. Div. 2020) (alteration in original) (quoting State v. Nance, 228 N.J. 378, 393 (2017)). We "may correct an illegal sentence 'at any time before it is completed.'" Id. at 328 (quoting State v. Murray, 162 N.J. 240, 247 (2000)); see R. 3:21-10(b)(5) ("A motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice . . . ."). "If a defendant's sentence is illegal, a reviewing court must remand for resentencing." Steingraber, 465 N.J. Super. at 328.

"There are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019).

> Those two categories of illegal sentences have been "defined narrowly." [Murray, 162 N.J. at 246]. For example, . . . [a sentence] is not illegal if the sentencing judge fails to state the reasons for imposition of a sentence on the record as is required by case law, but otherwise imposes an authorized sentence[.] [State v.] Acevedo, 205 N.J. [40,] 47 [(2011)]. In other words, even sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law.
>
> [Id. at 145-46.]

In State v. Beauchamp, pursuant to a plea agreement, the defendant pleaded guilty to burglary and contempt and was sentenced to an aggregate prison term of five years. 262 N.J. Super. 532, 534 (App. Div. 1993). At his plea hearing, the "defendant admitted to a January 1990 burglary at the home of his estranged wife and a May 1990 violation of a temporary restraint issued pursuant to the Prevention of Domestic Violence Act [of 1991], [N.J.S.A. 2C:25-17 to -35], under which defendant had been ordered to stay away from his wife." Ibid. Three sentencing proceedings were conducted, resulting in the entry of an amended judgment of conviction that prohibited the defendant from entering the Township of Fairfield or contacting the victim at her place of employment in Fairfield as a "condition for release from custody." Id. at 534-35. In support, the judge explained that the defendant "ha[d] continued to threaten to kill his wife while incarcerated" and "repeated these threats to family members." Id. at 535.

On appeal, the defendant challenged the trial court's authority to impose conditions of parole as part of the sentence imposed. Ibid. We reversed, holding that "the trial court had no authority to impose conditions of parole." Id. at 536. We reasoned:

> We can understand the considerations that motivated the sentencing judge, in the circumstances he

faced, to establish the conditions of parole. We share his concerns for the safety of the victim and her family in the light of defendant's past conduct. We are, nevertheless, constrained to conclude that, under clear, prevailing rules of law, a sentencing judge is without the power to establish conditions of parole, even those that are case- or party-related and may be warranted by the nature of the circumstances or the quality of the relationships.

[Ibid.]

Because the defendant was not yet on parole, we expressed "concern[] with the wisdom of judicially established conditions for parole which are crafted on sentencing day to govern a defendant some time in the future when he becomes eligible for parole." Ibid. We also relied on separation of powers principles to support our decision, stating:

Under our constitutional and statutory scheme, once a trial court has pronounced sentence and entered a judgment of conviction, it relinquishes jurisdiction over the matter to the executive branch, except for the appellate process and to the extent that regular procedures permit the matter to be reopened in a judicial forum for limited purposes which can be achieved only in a court. See, e.g., R. 3:21-10; 3:22.

Just as the executive branch of government may not intrude unduly on the judiciary's discharge of its responsibilities in the sentencing process, State v. Lagares, 127 N.J. 20, [27-28] (1992), so is the judicial branch limited in its role thereafter as the sentence is executed. Creation of the substantive standards governing both branches is the province of the third, the

legislative, State v. Des Marets, 92 N.J. 62, 80-81 (1983); and the respective prerogatives of the judiciary and the executive are each immune from undue intrusion by the other branch. N.J. Const. art. III, [¶] 1.

[Id. at 537.]

We noted that whereas the sentencing judge's "emphatic recommendations" had "meaning and viability as background for the Parole Board," the conditions "articulated by the sentencing judge" were "a nullity insofar as they were designed to govern and control the decisions whether, when, and under what conditions parole would be granted to defendant" and therefore had to "be modified to reflect their correct character as recommendations and not as mandates." Id. at 538. Indeed, "[t]he symmetry of the constitutional scheme permits the judicial and executive branches to participate in the other's province by way of recommendation but not by way of directing the outcome." Id. at 537.

Applying these principles, we agree with defendant that the judge did not have the authority to impose conditions on his existing PSL sentence. Considering the separation of powers concerns expressed in Beauchamp, the fact that defendant was already on parole does not justify a different outcome. We are equally unpersuaded by the State's invited error argument based on defense counsel inviting the judge to impose anger management counseling as a

19

condition of defendant's PSL sentence. See State v. Manzie, 335 N.J. Super. 267, 278 (App. Div. 2000) ("[A] defendant may not acquiesce in the imposition of an illegal sentence."). Accordingly, we affirm the conviction and the custodial portion of the sentence but vacate the conditions imposed on defendant's PSL sentence and remand for modification of the judgment of conviction to conform with this opinion.[2]

The conviction is affirmed; the sentence is affirmed in part, reversed in part, and remanded for modification of the judgment of conviction consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Although N.J.S.A. 4:22-26.2 allows a sentencing court to ban a person convicted of an animal cruelty violation from owning, harboring, residing with, or having custody or control of any other animals, the statute became effective in July 2023, more than three years after defendant's offense and over one month after defendant's sentence, and is not implicated in this appeal.